[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. New Carlisle v. Clark Cty. Bd. of Elections*, Slip Opinion No. 2025-Ohio-814.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-814

THE STATE EX REL. CITY OF NEW CARLISLE *v.* CLARK COUNTY BOARD OF ELECTIONS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. New Carlisle v. Clark Cty. Bd. of Elections*, Slip Opinion No. 2025-Ohio-814.]

*Mandamus—Elections—R.C. 718.04(C)(2)—Board of elections disregarded applicable law set forth in R.C. 718.04(C)(2) when it rejected city council's request to have proposed ordinance for continuation of an excess municipal income tax placed on the May 6, 2025 primary-and-special-election ballot—Writ granted.*

(No. 2025-0247—Submitted March 6, 2025—Decided March 11, 2025.)

IN MANDAMUS.

————————————

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ.

**Per Curiam.**

{¶ 1} An Ohio municipal corporation may not levy an income tax greater than 1 percent "without having obtained the approval of the excess by a majority of [its] electors" at a general, primary, or special election. R.C. 718.04(C)(2). To have the issue of an excess income tax placed on the ballot, the municipal corporation must file with the board of elections at least 90 days before the election "a copy of the ordinance together with the resolution specifying the date the election is to be held." *Id.*

{¶ 2} Relator, the City of New Carlisle ("New Carlisle" or "the city"), wants to place before its electors an ordinance authorizing the continuation of a 0.5 percent increase in the municipal income tax for the purpose of paying police expenses ("the income-tax levy"). Respondent Clark County Board of Elections ("the board") refused to place the income-tax levy on the ballot because, in its view, R.C. 718.04(C)(2) requires the city to pass an ordinance approving the income-tax increase before submitting the income-tax levy to the board for placement on the ballot. New Carlisle commenced this expedited election action against the board and its director, respondent Jason Baker, seeking a writ of mandamus ordering Baker and the board to place the income-tax levy on the May 6, 2025 primary-and-special-election ballot. Because the parties agree that Baker is not a proper respondent in this action, we dismiss the action as to him. But we grant the requested writ of mandamus against the board because the board's interpretation of R.C. 718.04(C)(2) is incorrect.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Process for Placing a Municipal-Income-Tax Levy on the Ballot

{¶ 3} A municipal corporation may levy an income tax under the provisions and limitations set forth in R.C. Ch. 718. *See* R.C. 718.04(A). Any municipal corporation that levied an income tax in excess of 1 percent on or before March 23, 2015, is authorized to continue levying the tax at that rate in accordance

with the original ordinance or resolution authorizing the tax. R.C. 718.04(B). Otherwise, "no municipal corporation shall levy a tax on income at a rate in excess of one percent without having obtained the approval of the excess by a majority of the electors of the municipality voting on the question at a general, primary, or special election." R.C. 718.04(C)(2). The requirements for placing an income-tax levy in excess of 1 percent on the ballot are outlined in R.C. 718.04(C)(2) as follows:

> The legislative authority of the municipal corporation shall file with the board of elections at least ninety days before the day of the election *a copy of the ordinance together with a resolution* specifying the date the election is to be held and directing the board of elections to conduct the election. The ballot shall be in the following form: "Shall the Ordinance providing for a ___ per cent levy on income for (Brief description of the purpose of the proposed levy) be passed?

| | |
|---|---|
| FOR THE INCOME TAX | |
| AGAINST THE INCOME TAX | |

"

> In the event of an affirmative vote, the proceeds of the levy may be used only for the specified purpose.

(Emphasis added; capitalization in original.)

{¶ 4} At issue here is what the statute means when it says the legislative authority of the municipal corporation must file "a copy of the ordinance" with the board of elections to place an income-tax levy on the ballot.

**B. New Carlisle's Income-Tax Levy**

{¶ 5} In 2015, New Carlisle voters passed an ordinance increasing the municipal income tax from 1 percent to 1.5 percent for five years for the purpose of paying police expenses, and in 2019, they approved a continuation of the 0.5 percent increase for five more years. The 0.5 percent increase is scheduled to expire on June 30, 2025.

{¶ 6} In December 2024, the New Carlisle City Council passed Resolution 2024-19R, asking the board to place on the May 6, 2025 ballot an issue to extend the collection of the additional 0.5 percent income tax through June 30, 2030. The resolution specified that the purpose of the additional 0.5 percent income tax was to pay police expenses. On the same day the city council passed the resolution, it introduced Ordinance 2024-76, which would amend New Carlisle's codified ordinances to provide that an additional 0.5 percent income tax would be collected from July 1, 2025, through June 30, 2030. The city council gave Ordinance 2024-76 a first reading but did not vote on it. The city council attached the ordinance as Exhibit A to Resolution 2024-19R and incorporated it therein.

{¶ 7} New Carlisle filed Resolution 2024-19R with the board on December 19, 2024, more than a month and a half before the deadline to request that an issue be placed on the May 6, 2025 primary-and-special election ballot. At its February 11 meeting, the board voted against placing the income-tax levy on the ballot because the city council had not passed Ordinance 2024-76 before submitting it to the board with Resolution 2024-19R.

{¶ 8} New Carlisle commenced this action on February 14 and filed an amended complaint five days later, seeking a writ of mandamus ordering the board and its director, Baker, to place the income-tax levy on the May 6, 2025 primary-and-special-election ballot. The board and Baker filed an answer, admitting the material factual allegations but denying that New Carlisle is entitled to a writ of mandamus. The parties filed an "Agreed Statement of Facts" and briefs in

4

accordance with the schedule for expedited election cases under S.Ct.Prac.R. 12.08. New Carlisle filed evidence with its merit brief.

## II. ANALYSIS

### A. Dismissal of Respondent Baker

{¶ 9} The parties agree that Baker does not owe a clear legal duty to New Carlisle to place the income-tax levy on the May 6, 2025 ballot "unless directed to do so" by the board. Consistent with this stipulation, in its briefs, New Carlisle requests that this court issue a writ of mandamus against only the board, and the board and Baker ask us to dismiss the mandamus claim as to Baker. Accordingly, we dismiss this action as to Baker.

### B. Mandamus Claim Against the Board

{¶ 10} To obtain a writ of mandamus against the board, New Carlisle must establish by clear and convincing evidence (1) a clear legal right to have the income-tax levy placed on the May 6, 2025 ballot, (2) a clear legal duty on the part of the board to place it on the ballot, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. White v. Franklin Cty. Bd. of Elections*, 2020-Ohio-524, ¶ 6. In this case, New Carlisle lacks an adequate remedy in the ordinary course of the law because the election is less than two months away. *See State ex rel. Clark v. Twinsburg*, 2022-Ohio-3089, ¶ 16.

{¶ 11} To ascertain whether New Carlisle has proved the remaining elements here, we must determine whether the board has engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions by refusing to place the income-tax levy on the ballot. *See State ex rel. Mann v. Delaware Cty. Bd. of Elections*, 2015-Ohio-718, ¶ 13. New Carlisle has not alleged fraud or corruption by the board here. Therefore, the relevant inquiry is whether the board abused its discretion or clearly disregarded applicable law in refusing to place the income-tax levy on the May 6, 2025 primary-and-special-election ballot.

5

**{¶ 12}** The outcome of this case turns on the meaning of one phrase—"a copy of the ordinance"—in R.C. 718.04(C)(2).  At least 90 days before the May 6, 2025 election, New Carlisle filed with the board the following: (1) Resolution 2024-19R, asking the board to place the income-tax levy on the upcoming-election ballot and (2) a copy of Ordinance 2024-76, which would become law if the income-tax levy were approved by voters at the election.  The board, however, rejected the city's request to place the income-tax levy on the ballot, because the city council had not yet *passed* an ordinance pertaining to that levy.  In other words, according to the board, the "copy of the ordinance" that New Carlisle must file under R.C. 718.04(C)(2) is an ordinance that the city has already enacted and wants to present to the municipality's electors for passage.  New Carlisle argues that the city council did not have to pass Ordinance 2024-76 before submitting it to the board with Resolution 2024-19R, because under R.C. 718.04(C)(2), it is the city's electors who must pass the ordinance approving the excess municipal income tax.

**{¶ 13}** We agree with the city's interpretation of R.C. 718.04(C)(2).

*1.  "Copy of the Ordinance" Means the Proposed Ordinance to Be Submitted to the Voters*

**{¶ 14}** To determine what R.C. 718.04(C)(2) requires, we begin by reviewing the plain language of the statute.  *See Total Renal Care, Inc. v. Harris*, 2024-Ohio-5685, ¶ 13.  In doing so, we are required to "read words and phrases in context and construe them in accordance with rules of grammar and common usage." *State ex rel. Russell v. Thornton*, 2006-Ohio-5858, ¶ 11.  We must also read the statute as a whole: we "cannot pick out one sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the enacting body."  *State v. Wilson*, 1997-Ohio-35, ¶ 9; *see also K Mart Corp. v. Cartier*, 486 U.S. 281, 291 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.").

**{¶ 15}** To levy a municipal income tax in excess of 1 percent, a municipality must obtain approval for the ordinance imposing the tax increase by a majority vote of the municipality's electors. *See* R.C. 718.04(C)(2). To have such a levy placed on the ballot, the legislative authority of the municipal corporation must timely file with the board of elections "a copy of *the ordinance* together with a resolution specifying the date the election is to be held." (Emphasis added.) *Id.* In the next sentence of the statute, the General Assembly specifies that the ballot shall use the following language: "'Shall *the Ordinance* providing for a __ per cent levy on income . . . be passed?' " (Emphasis added.) *Id.* Thus, in consecutive sentences, the statute uses the same words—"the ordinance"—to describe both what the legislative authority of the municipal corporation must file with the board of elections (along with its resolution specifying the date the election is to be held) and what will be on the ballot for voter approval.

**{¶ 16}** The structure of R.C. 718.04(C)(2) indicates that "the ordinance," as that term is used in the statute, means the ordinance that is being presented to the voters for approval. And under the statute, it is *the voters* who decide whether "the ordinance" will be passed. The statute does not require the municipality's legislative authority to have passed the ordinance that would impose the excess municipal income tax before it is placed on the ballot. Indeed, the first sentence of R.C. 718.04(C)(2) makes clear that "no municipal corporation shall levy" an income tax in excess of 1 percent without first having obtained voter approval. All that R.C. 718.04(C)(2) requires is for New Carlisle to do exactly what it did here— timely file with the board (1) its resolution directing the board to conduct an election on a specified date and (2) a copy of the ordinance that the city's electors would be voting on.

### 2. *The Board Misreads the Statute*

**{¶ 17}** Under its interpretation of R.C. 718.04(C)(2), the board would require New Carlisle to pass Ordinance 2024-76 *before* submitting it to the voters.

But the board's arguments in support of its interpretation of the statute are unpersuasive.

{¶ 18} To "pass" an ordinance means "[t]o enact" it into law. *Black's Law Dictionary* (10th Ed. 2014); *see also id.* (defining "enact" as "[t]o make into law by authoritative act; to pass"). But R.C. 718.04(C)(2) makes clear that a municipal corporation may not levy an income tax in excess of 1 percent without voter approval. Thus, the municipal corporation cannot enact legislation allowing it to levy the excess income tax without first obtaining voter approval to do so. Yet the board insists that New Carlisle has to do just that—"pass" an ordinance enacting into law the 1.5 percent municipal income tax that the city is required by state law to submit to the voters. The board's interpretation of R.C. 718.04(C)(2) cannot be correct, because that interpretation would require the city to "pass" an ineffectual ordinance.

{¶ 19} The board, however, contends that it is possible for *both* the city council and the city's voters to "pass" an ordinance. The board argues that requiring the New Carlisle City Council to pass the excess-income-tax ordinance *before* obtaining voter approval for the ordinance is a logical interpretation of the statute because the words "pass" and "approve" are synonymous in the context of giving effect to legislation. With that premise as the starting point, the board points out that other statutory and constitutional provisions allow voters to "approve" an ordinance that has been "passed" by a municipal corporation's legislative authority.

{¶ 20} In support of its argument, the board first cites Article XVIII, Section 5 of the Ohio Constitution, which states that a municipality "shall act by ordinance" to acquire, construct, own, lease, or operate a public utility (or to contract with any person or company therefor), but if a valid referendum petition is filed before the effective date of the ordinance, that ordinance shall not take effect "until submitted to the electors and approved by a majority" of the voters. But the analogy the board attempts to make between this constitutional provision and R.C. 718.04(C)(2) does

not work to support its argument. Under the constitutional provision cited by the board, the ordinance passed by the municipality would have the force and effect of law but for the filing of a valid referendum petition. R.C. 718.04(C)(2), however, does not require that voters demand a referendum to prevent an ordinance imposing an excess municipal income tax from taking effect. On the contrary, under R.C. 718.04(C)(2), an ordinance to levy an excess municipal income tax *cannot* be effective unless it is *first* approved by voters. *See id.* The board's analogy to the referendum process is inapt.

{¶ 21} The board next cites R.C. 715.84, which governs agreements among two or more municipal corporations to share the costs for improvements in a designated municipality utility district. *See* R.C. 715.84(B). Specifically, the board relies on R.C. 715.84(E), which provides that "each contracting party may enact an ordinance approving the contract" to designate a municipal utility district and that once enacted, the ordinance must be submitted to the electors of each contracting municipality for approval using the ballot language set forth in R.C. 715.84(F). However, the language of R.C. 715.84 undermines, rather than supports, the board's position. That statute expressly provides that contracting municipal corporations may "enact" an ordinance "approving the contract" to designate a municipal utility district but that the contract does not go into effect until a majority of the electors of each municipality in the designated district vote for it. R.C. 715.84(E) and (F). The process described in that statute expressly provides for the enactment of an ordinance approving a contract followed by voter approval of the ordinance. In contrast, the statute at issue in this case calls only for an ordinance to be submitted to voters for approval; it does not state that the municipal legislative authority must first enact that ordinance. *See* R.C. 718.04(C)(2).

*3. Absence of the Phrase "Proposed Ordinance" in the Statute is Immaterial*

{¶ 22} The board also argues that New Carlisle's interpretation of R.C. 718.04(C)(2) cannot be correct, because the statutory language calls for "a copy of

the ordinance," not a copy of the "proposed ordinance," to be filed with the board. The board contends that the General Assembly knows how to use the phrase "proposed ordinance" when it means to do so and that because the General Assembly did not use that phrase in R.C. 718.04(C)(2), only an ordinance "actually passed by the legislative authority of the municipal corporation" will suffice to qualify a municipal-income-tax levy for placement on the ballot. We disagree.

{¶ 23} The three statutes that the board cites to show how the General Assembly uses the phrase "proposed ordinance" prove nothing about what R.C. 718.04(C)(2) means. First, the board points to R.C. 705.15, which outlines the powers of a municipal corporation's legislative authority. That statute provides that "[e]ach proposed ordinance or resolution shall be in written or printed form, and shall contain not more than one subject which shall be clearly stated in the title." Next, the board directs us to R.C. 743.45, which sets forth the ability of a municipal legislature to ask the Ohio Public Utilities Commission "to review and comment upon the equity and financial implications of the portion of a proposed ordinance that relates to" electric-utility rates. Finally, the board cites R.C. 5709.45, which prescribes the process by which a municipal corporation may create a downtown-development district and exempt improvements in the district from taxation. R.C. 5709.45(G)(1) provides that the legislative authority of the municipal corporation "shall send notice of the proposed ordinance to the school district" and that it must include with the notice "a copy of the proposed ordinance and . . . indicate the date on which the legislative authority intends to adopt the ordinance."

{¶ 24} None of these statutes are structured like R.C. 718.04(C)(2). Indeed, none of them arise in the context of an ordinance that cannot be enacted without voter approval. Each of the statutes cited by the board discusses a "proposed ordinance" in the context of either the procedural requirements for a proposed ordinance (R.C. 705.15) or a municipal legislature's passage of an ordinance that it has the authority to pass without voter approval (R.C. 743.45 and 5705.45(G)(1)).

In contrast, the ordinance that the municipal legislative authority must submit to the board of elections with its resolution under R.C. 718.04(C)(2) is *necessarily* a proposed ordinance because the ordinance cannot be passed without voter approval. Therefore, the absence of the word "proposed" to describe the ordinance referred to in R.C. 718.04(C)(2) is of no moment.

{¶ 25} The General Assembly's use of the phrase "a copy of the ordinance" in R.C. 718.04(C)(2) refers to the proposed ordinance being submitted to the municipality's electors for approval. It cannot mean anything else. That the General Assembly did not use the phrase "proposed ordinance" is of no significance, given the overall context of the statute at issue here.

*4. The Ohio Secretary of State's Interpretation of R.C. 718.04(C)(2) is*
*Unpersuasive Authority*

{¶ 26} Finally, the board relies on the *Ohio Questions & Issues Handbook* published by the Ohio Secretary of State in support of its position. In the chapter pertaining to the procedure for elections under R.C. 718.04(C)(2), the secretary opines that "[t]he legislative authority of the municipal corporation wishing to impose an income tax greater than 1 percent must *pass* an **ordinance** authorizing the income tax." (Emphasis added; boldface in original.) *Ohio Ballot Questions and Issues Handbook*, Chapter 4: Income Tax for Municipal Corporations and School Districts, at 38, https://www.ohiosos.gov/globalassets/elections /eoresources/general/questionsandissues.pdf#page=38 (accessed March 6, 2025) [https://perma.cc/CN2F-K75P].

{¶ 27} This court is not required to defer to the secretary of state's interpretation of election law. *See State ex rel. Hildreth v. LaRose*, 2023-Ohio-3667, ¶ 22, citing *TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, 2022-Ohio-4677, ¶ 3. The board acknowledges as much but asks us to regard the secretary's interpretation as "persuasive authority in this

case" because, the board reasons, the secretary's vast experience in overseeing the administration of elections statewide "should count for something."

**{¶ 28}** The secretary's interpretation of R.C. 718.04(C)(2) does not carry the day; it is a flawed interpretation that the board should not have adopted and one that this court will not follow. Indeed, we have declined to follow the secretary's interpretation of election statutes when we have found the interpretation to be erroneous. *See Hildreth* at ¶ 22-23.

### III. CONCLUSION

**{¶ 29}** We dismiss this cause as to respondent Baker only. As for the board, we conclude that it clearly disregarded applicable law in rejecting the income-tax levy submitted by New Carlisle for placement on the May 6, 2025 primary-and-special-election ballot. We therefore grant a writ of mandamus ordering the board to place the income-tax levy submitted by New Carlisle on the May 6, 2025 ballot.

Writ granted.

_____

Jeffries & Hollingsworth Law, L.L.C., and Jacob M. Jeffries; and Baker Dublikar and Tonya J. Rogers, for relator.

Daniel P. Driscoll, Clark County Prosecuting Attorney, and Andrew P. Pickering, Assistant Prosecuting Attorney, for respondents.

_____