[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Bobovnyik v. Mahoning Cty. Bd. of Elections*, Slip Opinion No. 2020-Ohio-4003.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-4003

THE STATE EX REL. BOBOVNYIK *v.* MAHONING COUNTY BOARD OF ELECTIONS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Bobovnyik v. Mahoning Cty. Bd. of Elections*, Slip Opinion No. 2020-Ohio-4003.]

*Mandamus—Elections—Action to compel board of elections to certify relator as an independent candidate for election for the office of county sheriff—Residency—R.C. 311.01(B)(2)—County board of elections did not abuse its discretion or disregard applicable law in determining that relator did not satisfy residency requirement—Writ denied.*

(No. 2020-0784—Submitted August 4, 2020—Decided August 7, 2020.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} Relator, Douglas Bobovnyik, seeks a writ of mandamus to compel respondent, the Mahoning County Board of Elections, to certify his name to the

November 3, 2020 ballot as an independent candidate for the office of Mahoning County Sheriff.  We deny the writ.

**Background**

{¶ 2} In 2018, Bobovnyik began considering whether to run for the office of Mahoning County Sheriff in the November 2020 general election.  At that time, he was a lieutenant in the Youngstown Police Department and a Columbiana County resident.  Under R.C. 311.01(B)(2), to be an eligible independent candidate, Bobovnyik had to be a resident of Mahoning County "for at least one year immediately prior to" March 16, 2020.  In March 2019, he took steps to establish his residency in Mahoning County.

{¶ 3} On March 1, 2019, Bobovnyik signed a commercial lease for a used-car lot in Austintown, Mahoning County.  The premises included a two-story building, and Bobovnyik testified that he immediately moved into an apartment on the second floor of the building.  According to Bobovnyik, he furnished the apartment with a bed, established utility and Internet connections, and began receiving mail there.  He also reported the Austintown address to his bank as his new address and purchased checks reflecting that change.  And he testified that on several occasions he had been served subpoenas (related to his work as a police officer) at the Austintown address.  He testified that he lived there until March 1, 2020, when he moved to an apartment in Canfield, which is also in Mahoning County, where he still resides.

{¶ 4} Throughout this time, Bobovnyik's wife continued to live at the couple's Columbiana County home.  Bobovnyik has conceded that he split his time between the Mahoning County apartments and the Columbiana County family home and that he occasionally spent the night in Columbiana County.  He also has acknowledged that he entertained guests at his Columbiana County home after March 2019.

{¶ 5} On March 16, 2020, Bobovnyik filed with the board his statement of candidacy and nominating petition to be an independent candidate for Mahoning County Sheriff for the November 3, 2020 general election. At a hearing on May 26, the board heard testimony from several witnesses concerning Bobovnyik's claim that he had resided in Mahoning County since March 2019. Bobovnyik testified to the facts set forth above, but other witnesses either contradicted him or gave the board reasons to question whether Bobovnyik actually had resided in Mahoning County.

{¶ 6} Bobovnyik's stepdaughter and her husband testified that Bobovnyik and his wife have continued to live at their Columbiana County house since March 2019, and they both suggested that the apartments in Mahoning County were a ruse to allow Bobovnyik to run for office in Mahoning County. The Youngstown Police Department's chief of police testified that when Bobovnyik completed paperwork for his retirement in April 2019, he listed his Columbiana County address as his home address. And a process server who had attempted to serve a subpoena on Bobovnyik's wife at the Columbiana County house (to compel her to attend the May 26 hearing) testified that Bobovnyik answered the door in his bathrobe at 7:00 a.m. Bobovnyik's wife was in Florida at the time of the May 26 hearing and did not attend. Bobovnyik testified that when his wife is out of town, he spends the night at the Columbiana County house to care for their dogs.

{¶ 7} The board also considered numerous documents relating to a federal lawsuit involving the Bobovnyiks' Columbiana County house. In several of those documents, Bobovnyik or his attorney suggested that Bobovnyik was residing—and would continue to reside—at the house after March 1, 2019. Most notably, in a May 2019 conveyance-fee statement that was recorded with the Columbiana County auditor, Bobovnyik (or someone acting on his behalf) indicated that his Columbiana County house would be his principal residence on or before January 1, 2020. That representation qualified Bobovnyik for a homestead exemption to reduce the taxes on the property, which was titled solely in his name. *See* R.C.

323.151 et seq. And Bobovnyik also signed a settlement agreement filed in federal court in May 2019 suggesting that he was still living at his house in Columbiana County. At the May 26 hearing, Bobovnyik conceded that by signing the settlement agreement, he had told the federal court that he was residing in Columbiana County at the time.

{¶ 8} The board questioned Bobovnyik's credibility and found him ineligible to be a candidate for the office of Mahoning County Sheriff because he had not demonstrated that he had resided in Mahoning County for the year immediately preceding March 16, 2020, as required under R.C. 311.01(B)(2). The board also found Bobovnyik to be ineligible because the board had not received the results of his background check, as required under R.C. 311.01(B)(6). The board therefore refused to place Bobovnyik's name on the ballot.

{¶ 9} On June 24, 2020, Bobovnyik filed this mandamus action to compel the board to place his name on the November 3, 2020 ballot for the office of Mahoning County Sheriff. We granted Bobovnyik's motion for an expedited case schedule, and the case is now fully briefed.

**Analysis**

{¶ 10} To be entitled to a writ of mandamus, Bobovnyik must prove, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the board to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6.

{¶ 11} The first two elements require us to determine whether the board "engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions." *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11. Bobovnyik does not allege fraud or corruption, so the question is whether the board abused its discretion or clearly disregarded applicable law. A board of elections abuses its discretion when it acts

unreasonably, arbitrarily, or unconscionably. *State ex rel. McCann v. Delaware Cty. Bd. of Elections*, 155 Ohio St.3d 14, 2018-Ohio-3342, 118 N.E.3d 224, ¶ 12.

{¶ 12} As for the third element, a relator in an election mandamus action often lacks an adequate remedy in the ordinary course of the law due to the proximity of the election. *See State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections*, 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, ¶ 18. The election at issue here is less than 90 days away, and under R.C. 3511.04, the board must distribute uniformed-services and overseas absentee ballots at least 46 days before the election. Bobovnyik therefore lacks an adequate remedy in the ordinary course of the law and satisfies the third element for mandamus relief.

{¶ 13} R.C. 311.01(B)(2) provides that "no person is eligible to be a candidate for sheriff, and no person shall be elected * * * to the office of sheriff, unless * * * [t]he person has been a resident of the county in which the person is a candidate for * * * the office of sheriff for at least one year immediately prior to the qualification date." The parties agree that the applicable qualification date was March 16, 2020.

{¶ 14} "In election cases involving candidate-residence issues, this court applies R.C. 3503.02." *State ex rel. Morris v. Stark Cty. Bd. of Elections*, 143 Ohio St.3d 507, 2015-Ohio-3659, 39 N.E.3d 1232, ¶ 23. Four provisions of R.C. 3503.02 are relevant to determining Bobovnyik's residence:

> (A) That place shall be considered the residence of a person in which the person's habitation is fixed and to which, whenever the person is absent, the person has the intention of returning.
>
> (B) A person shall not be considered to have lost the person's residence who leaves the person's home and goes into another state or county of this state, for temporary purposes only, with the intention of returning.

(C) A person shall not be considered to have gained a residence in any county of this state into which the person comes for temporary purposes only, without the intention of making such county the permanent place of abode.

(D) The place where the family of a married person resides shall be considered to be the person's place of residence; except that when the spouses have separated and live apart, the place where such a spouse resides the length of time required to entitle a person to vote shall be considered to be the spouse's place of residence.

{¶ 15} R.C. 3503.02 "emphasizes the person's intent to make a place a fixed or permanent place of abode." *State ex rel. Duncan v. Portage Cty. Bd. of Elections*, 115 Ohio St.3d 405, 2007-Ohio-5346, 875 N.E.2d 578, ¶ 11. When the various factors listed in R.C. 3503.02 lead to conflicting conclusions, the person's claim that a particular location is his voting residence must be accorded substantial weight. *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 27.

{¶ 16} The board argues that because Bobovnyik is married, R.C. 3503.02(D) controls. Bobovnyik correctly points out, however, that the language in R.C. 3503.02(D) does not create an irrebuttable presumption that Bobovnyik's residence was in Columbiana County. *See Husted* at ¶ 32-34. But Bobovnyik goes even further, suggesting that we should disregard his wife's residency entirely and focus only on his stated intent to reside in Mahoning County. We do not accept that invitation; although not irrebuttable, R.C. 3503.02(D) does "create[] a presumption that the place where the family of a married person resides is the person's place of residence." *Husted* at ¶ 32. The residency of Bobovnyik's wife is relevant.

{¶ 17} Bobovnyik also argues that R.C. 3503.02(D) does not apply here, because it contains an exception for "when the spouses have separated and live apart." He argues that the exception applies because, although he and his wife are not legally separated, they do live apart. Bobovnyik's reading of that exception fails to account for the statute's language that the exception applies when the spouses are "separated *and* liv[ing] apart." (Emphasis added.) To have meaning other than "living apart," "separated" must refer to something akin to legal separation under R.C. 3105.17. Otherwise, the exception would swallow the rule entirely—the place where a person's spouse resides would be the person's residence, unless the person does not live with the spouse.

{¶ 18} The fact that Bobovnyik's wife continues to reside in Columbiana County works against Bobovnyik's mandamus claim and supports the board's conclusion. That alone makes it difficult for him to show—by clear and convincing evidence—that the board abused its discretion. *See Husted*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, at ¶ 27. But additional relevant factors also support the conclusion that the board did not abuse its discretion.

{¶ 19} As noted above, R.C. 3503.02 emphasizes a person's intent to reside in a particular place. *Duncan*, 115 Ohio St.3d 405, 2007-Ohio-5346, 875 N.E.2d 578, at ¶ 11; *Husted* at ¶ 27. Bobovnyik argues that his own testimony expressing his intent to become a Mahoning County resident, along with the Austintown lease and his updated banking records, definitively establishes his residency in Mahoning County. He contends that the board misapplied the law by considering documentary evidence to the contrary. And he argues that a statement of a board member at the May 26 hearing—that a person cannot establish residency "just by leasing a property and saying * * * this is where I live now"—is emblematic of the board's legal error in disregarding his subjective intent.

{¶ 20} Bobovnyik overestimates the legal significance and weight of his own testimony. Although we repeatedly have emphasized that a person's declared

intent to reside in a particular place is a significant factor in determining the person's residency, Bobovnyik fails to support his argument that a person's own statements are conclusive in the face of conflicting evidence. When the evidence is not one-sided, a board of elections has discretion to consider a witness's credibility and assign weight to the evidence accordingly. *See State ex rel. Herdman v. Franklin Cty. Bd. of Elections*, 67 Ohio St.3d 593, 596, 621 N.E.2d 1204 (1993).

{¶ 21} In cases involving a challenge to a candidate's residency, the main issue often is the candidate's *subjective* intent. *See, e.g.*, *Morris*, 143 Ohio St.3d 507, 2015-Ohio-3659, 39 N.E.3d 1232, at ¶ 27. It is obviously hard to scrutinize a candidate's own claims about where he intends to reside. That is, how can one really question Bobovnyik's intent after he clearly took steps to try to establish his residency in Mahoning County?

{¶ 22} But the board did not disbelieve Bobovnyik's stated intent. Rather, the record indicates that the board did not believe that Bobovnyik actually started living in Mahoning County in March 2019 or that he continued to live there throughout the next 12 months. Using the terminology of R.C. 3503.02(A), the board did not believe that Bobovnyik's "habitation [wa]s fixed" in Mahoning County.

{¶ 23} Indeed, several pieces of evidence raised legitimate questions about where Bobovnyik was actually living between March 2019 and March 2020. Significantly, Bobovnyik's own stepdaughter and her husband testified that they believe that Bobovnyik had been living in Columbiana County all along, and they even suggested that Bobovnyik and his wife had considered multiple possible Mahoning County addresses to identify as a residence. Besides Bobovnyik's own testimony, there is no evidence showing that Bobovnyik was actually living in Mahoning County. In fact, his Austintown lease limited his use of the premises to commercial car-lot purposes, and his connection to utilities and the Internet,

procurement of checks that included that address, and receipt of subpoenas at that address are all consistent with his establishing a used-car business. In this light, the board member's statement that a person cannot establish residency "just by leasing a property" has clearer meaning: it does not appear that the board member questioned Bobovnyik's subjective intent.

{¶ 24} Bobovnyik mainly relies on three cases to support his claim that the board abused its discretion and disregarded applicable law. He first relies on this court's decision in *State ex rel. Holwadel v. Hamilton Cty. Bd. of Elections*, 144 Ohio St.3d 579, 2015-Ohio-5306, 45 N.E.3d 994, to argue that it does not matter that he frequently had been absent from Mahoning County, so long as he always intended to return there. In *Holwadel*, the question was whether a person who had relocated to South Korea for work was qualified to be a Hamilton County elector. *Id.* at ¶ 1, 6-7. Before moving to South Korea, the elector had been working and living in Chicago, and over the course of several months before the move to South Korea, he vacated his Chicago residence and stayed for short periods with a friend in Cincinnati. *Id*. at ¶ 6-28. During that time, he used his friend's address to register to vote in Hamilton County. *Id*. at ¶ 7. We held that the board of elections did not abuse its discretion in rejecting a challenge to the elector's qualifications, because there was evidence that the elector intended to return to Cincinnati when his business in South Korea had concluded. *Id*. at ¶ 36.

{¶ 25} Although *Holwadel* suggests that it is relatively easy to establish a fixed place of habitation for voting purposes, that case is distinguishable. Significantly, there was no dispute in *Holwadel* that the elector's other place of habitation—South Korea—was temporary. *See id*. at ¶ 22. In contrast, here, there are legitimate questions about whether Bobovnyik's habitation at his house in Columbiana County after March 2019 was truly temporary. In fact, he testified that he would sell the house only if he won the election.

{¶ 26} Bobovnyik also relies on our decision in *Morris*, 143 Ohio St.3d 507, 2015-Ohio-3659, 39 N.E.3d 1232, to support his claim that signing a lease for a new place to live, moving belongings there, and sleeping there for several nights is enough to prove a change in residency. In *Morris*, the question was whether a candidate to be mayor of Canton had been a resident of that city on the day that he filed his nominating petition. *Id*. at ¶ 1, 20. The day before he filed the petition, the candidate had moved from his home in another municipality into a house in Canton that was owned by a friend. *Id*. at ¶ 7, 9, 14, 16. He had signed a lease for the house and took some furniture with him, but his wife stayed at the family home. *Id*. at ¶ 14-15. The candidate slept in the house for only four nights before moving into another house in Canton with his wife. *Id*. at ¶ 15. Despite the fact that the candidate's wife had initially remained in another municipality, we held that the candidate's subjective intent controlled. *Id*. at ¶ 23-26.

{¶ 27} *Morris* certainly supports the proposition that a court considering a residency challenge must give a candidate's declaration of a voting residence substantial weight. *Id*. at ¶ 26. But it does not advance Bobovnyik's claim that his "habitation [wa]s fixed," R.C. 3503.02(A), in Mahoning County. Whereas the candidate in *Morris* apparently only had to show that he had been living in Canton on the day that he filed his petition, Bobovnyik has a much greater burden: he must show that he had a fixed habitation in Mahoning County over the course of the entire year before the qualification date. Based on the evidence presented, it was within the board's discretion to find that Bobovnyik did not meet that burden.

{¶ 28} Finally, Bobovnyik relies on this court's decision in *State ex rel. O'Neill v. Athens Cty. Bd. of Elections*, __ Ohio St.3d __, 2020-Ohio-1476, __ N.E.3d __, to emphasize that a candidate can satisfy a one-year residency requirement based on her "subjective intention * * * to move permanently" to a new county. But *O'Neill*, too, fails to support Bobovnyik's argument that the board abused its discretion and disregarded applicable law. Although *O'Neill* involved a

one-year residency requirement, it was uncontroverted that the state-legislature candidate began residing in the district before the one-year period began and that she continued to reside there. *Id.* at ¶ 15. And Bobovnyik himself acknowledges that it was significant in *O'Neill* that the board of elections had "identified no other R.C. 3503.02 factors that it believe[d] contradict[ed the candidate's] stated intention to make Athens County her residence." *Id.* at ¶ 22. The same cannot be said here, because the application of R.C. 3503.02(D) (which implicates Bobovnyik's wife's residency in Columbiana County) clearly contradicts Bobovnyik's stated intent.

{¶ 29} Under R.C. 311.01(B)(2), Bobovnyik had to be a resident of Mahoning County for the entire year preceding March 16, 2020. He testified that he had met that requirement by living in two Mahoning County apartments during that one-year period and because he intended to establish his residency there. But after considering substantial evidence, the board questioned whether Bobovnyik had actually been living in Mahoning County. We defer to that factual determination and hold that the board did not abuse its discretion or disregard applicable law in determining that Bobovnyik did not satisfy R.C. 311.01(B)(2).

{¶ 30} Because the board's residency determination alone was sufficient to prevent Bobovnyik's name from being placed on the ballot, we need not address the board's additional determination that Bobovnyik failed to satisfy R.C. 311.01(B)(6).

Writ denied.

O'CONNOR, C.J., and FRENCH, FISCHER, DEWINE, and DONNELLY, JJ., concur.

KENNEDY and STEWART, JJ., concur in judgment only.

_____

Brunner Quinn, Rick L. Brunner, and Patrick M. Quinn, for relator.

Paul J. Gains, Mahoning County Prosecuting Attorney, and Gina D. Zawrotuk and Sharon K. Hackett, Assistant Prosecuting Attorneys, for respondent.

_____