[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Dunn v. Delaware Cty. Bd. of Elections*, Slip Opinion No. 2026-Ohio-1084.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-1084

THE STATE EX REL. DUNN *v.* DELAWARE COUNTY BOARD OF ELECTIONS ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Dunn v. Delaware Cty. Bd. of Elections*, Slip Opinion No. 2026-Ohio-1084.]**

*Elections—Mandamus—Writ sought to compel board of elections to hold hearing in accordance with R.C. 3501.39 and 3503.24—Rule of necessity requires board members to hear elector's protest and challenge against candidate despite board members' concerns that their participation in matter could convey a perception of bias—Writ granted.*

(No. 2026-0270—Submitted March 24, 2026—Decided March 27, 2026.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ. FISCHER, J., dissented.

**Per Curiam.**

{¶ 1} This is an expedited election action filed by relator, Velva Dunn, against respondents, the Delaware County Board of Elections and three of its four members—Edward D. Helvey, Peg L. Watkins, and Steven R. Cuckler. Dunn seeks a writ of mandamus ordering those three board members to hold a hearing on her protest and challenge concerning Melanie Ann Leneghan. Leneghan is the lone board member in this case who Dunn has not sued. We grant the writ.

## I. BACKGROUND

{¶ 2} By law, a county board of elections shall have four members. R.C. 3501.06(A). This election challenge, however, has been brought against only three of the board's four members because the fourth board member, Leneghan, is the subject of the protest and challenge.

{¶ 3} In December 2025, Leneghan, a Republican, filed a petition with the board seeking to become a candidate for election to the Ohio Republican Party State Central Committee at the primary election scheduled for May 5, 2026. In February 2026, Dunn, who is a resident of and a qualified elector in Delaware County, filed with the board a protest against Leneghan's candidacy and a challenge to Leneghan's voter registration. Dunn's position is that Leneghan resides in South Carolina, and therefore, Leneghan filed a candidacy petition with a false statement of residency and improperly registered to vote at an address located in Delaware County.

{¶ 4} The board scheduled a hearing on the matter for March 5, 2026. On March 2, however, board member Helvey, a Democrat, stated in a letter to the board's other members and the board's director and deputy director that he was recusing himself from deciding Dunn's protest and challenge. As the ground for his recusal, Helvey cited Section 4 of the Ohio Secretary of State's ethics policy for members and employees of boards of elections, which provides that "[m]embers . . . of the boards of elections should avoid actions and associations that create an

appearance of impropriety, that undermine public confidence in Ohio elections officials, or that interfere with the performance of duties by Ohio elections officials."[1]  With that policy in mind, Helvey stated that were he to vote to deny Dunn's protest and challenge against Leneghan, his vote could be construed as support for a fellow board member "regardless of the evidence and testimony provided."  On the other hand, were he to vote to sustain the protest and challenge against Leneghan, his vote could be seen as an act of "petty, partisan politics against a member of the opposing party."

{¶ 5} Two days after Helvey submitted his recusal letter, board member Watkins, also a Democrat, sent her own letter to the board's other members and its director and deputy director, stating that she too was recusing herself from Dunn's protest and challenge.  Echoing Helvey's concerns, Watkins stated that it was important for the board, in its deliberations, to avoid bias and the appearance of bias.  In her view, any board decision on Dunn's protest and challenge against Leneghan could be viewed as unfair.

{¶ 6} The board convened the hearing as scheduled.  As the hearing began, Leneghan initially stated that she would be "abstaining from the vote" on Dunn's protest and challenge.  Counsel for the board insisted that it was necessary for Leneghan to go a step further and "completely recuse."  On this recommendation, Leneghan stated that she was "completely recus[ing]."  Helvey reaffirmed his recusal, stating that he stood by his March 2 letter.  And Watkins reaffirmed her recusal as well, reiterating her view that it was important for the board to convey a

---

1. The ethics policy is an attachment to the secretary of state's Directive 2020-26 ("Appointments to the Board of Elections in Each County for Full Terms Commencing March 1, 2021; Board's 2021 Reorganization and Accompanying Documents").  Directive 2020-26 and the attached ethics policy can both be found on the secretary's website.  Ohio Secretary of State, *Directives*, https://www.ohiosos.gov/elections/elections-administration/directives#other-directives (accessed Mar. 27, 2026).

perception of impartiality. For his part, board member Cuckler, a Republican, stated that he did not intend to recuse.

{¶ 7} In view of the recusals by Helvey, Watkins, and Leneghan, counsel for the board opined that the board lacked a quorum and could not go forward with the hearing. Counsel for Dunn agreed with this assessment. Without a quorum, the board did not proceed with the hearing.

{¶ 8} The merits of her protest and challenge having gone undecided, Dunn then filed this original action against the board and Helvey, Watkins, and Cuckler—but not Leneghan—seeking a writ of mandamus ordering Helvey, Watkins, and Cuckler to hold a hearing on the protest and challenge. We denied Leneghan's motion to intervene as a respondent, 2026-Ohio-895, and the parties have filed briefs and evidence according to the schedule prescribed by this court's rule for deciding expedited election cases, S.Ct.Prac.R. 12.08, as modified by our March 10 order, 2026-Ohio-800. Leneghan has submitted an amicus curiae brief in support of respondents.

## II. ANALYSIS

{¶ 9} To be entitled to a writ of mandamus, Dunn must establish by clear and convincing evidence that (1) she has a clear legal right to the requested relief, (2) the respondents have a clear legal duty to provide it, and (3) she lacks an adequate remedy in the ordinary course of the law. *See State ex rel. Lambert v. Medina Cty. Bd. of Elections*, 2023-Ohio-3351, ¶ 12. As to the third element, Dunn has shown that she lacks an adequate remedy in the ordinary course of the law due to the proximity of the upcoming May primary election. *See id.*

{¶ 10} In claiming entitlement to the writ, Dunn advances two main arguments. Each argument is considered in turn.

### A. Statutory hearing requirements

{¶ 11} Dunn begins by pointing to the hearing requirements in R.C. 3501.39 (for protests) and R.C. 3503.24 (for challenges), claiming that as the person who

filed the protest and challenge against Leneghan, she has a clear legal right to receive a hearing under these statutes. Dunn maintains that were the board to hold a hearing on her protest and challenge, it would enable the board to carry out its duty to "[i]nvestigate irregularities, nonperformance of duties, or violations of Title XXXV of the Revised Code by election officers and other persons," R.C. 3501.11(J), "[r]eview, examine, and certify the sufficiency and validity of petitions," R.C. 3501.11(K)(1), and "[i]nvestigate and determine the residence qualifications of electors," R.C. 3501.11(Q).

{¶ 12} Relevant to Dunn's protest against Leneghan's candidacy, R.C. 3501.39(A)(2) provides that "a board of elections shall accept any petition [for candidacy] described in section 3501.38 of the Revised Code unless . . . [a] written protest against the petition or candidacy, naming specific objections, is filed, a hearing is held, and a determination is made by the election officials with whom the protest is filed that the petition violates any requirement established by law." When a protest is filed, the statute requires a board of elections to conduct a quasi-judicial hearing on the protest. *State ex rel. Miller v. Hamilton Cty. Bd. of Elections*, 2021-Ohio-831, ¶ 25. As for Dunn's challenge to Leneghan's voter registration, R.C. 3503.24(A) authorizes "any qualified elector" to "challenge . . . the right to vote of any registered elector . . . ." When a board cannot determine whether to grant or deny a challenge based on its records, the board shall hold a hearing. R.C. 3503.24(B). This court has held that a hearing conducted under R.C. 3503.24 "constitutes a quasi-judicial proceeding." *State ex rel. Tremmel v. Erie Cty. Bd. of Elections*, 2009-Ohio-5773, ¶ 16.

{¶ 13} There is no dispute here that but for the three recusals that deprived the board of a quorum, R.C. 3501.39 and 3503.24 compelled the board to move forward with a hearing on Dunn's protest against Leneghan's candidacy and challenge to Leneghan's voter registration. Indeed, it would be hard for the board to argue otherwise, for it scheduled and convened such a hearing.

{¶ 14} The question that remains to be decided is whether Dunn can compel Helvey and Watkins to sit alongside Cuckler in hearing her protest and challenge. We hold that she can.

### B. Recusals and the rule of necessity

{¶ 15} Dunn's second main argument asserts that regardless of the propriety of their recusals, the "rule of necessity" mandates that Helvey and Watkins have a duty to sit alongside Cuckler in hearing Dunn's protest and challenge. In support, Dunn says that no public body except for the board may hear her protest and challenge. If the rule is not applied, then Dunn points to the possibility that her protest and challenge will never be heard, thereby placing Leneghan above the law. For their part, respondents agree that the board constitutes the proper forum for deciding Dunn's protest and challenge. But respondents maintain that R.C. 3501.07 provides a means for Dunn's protest and challenge to be heard, notwithstanding the recusals. We address these contentions out of order.

{¶ 16} To begin, we note that respondents provide no analysis of R.C. 3501.07, which alone suffices to reject their contention that the statute applies. *See Rover Pipeline, L.L.C. v. Harris*, 2025-Ohio-2806, ¶ 62. In any event, we have little difficulty in concluding that the statute has nothing to do with this case.[2] R.C. 3501.07 pertains to a "vacancy [that] occurs in the board." And it generally authorizes a "qualified elector" to fill the vacancy by way of an appointment process involving the secretary of state. *Id.* This case, however, does not involve a *vacancy* on the board. It involves *recusals* by board members. The statute does

---

2. Leneghan's amicus curiae brief suggests that the secretary of state could decide the matter under R.C. 3501.11(X), which provides that "[i]n all cases of a disagreement in the board, if no decision can be arrived at, the director or chairperson shall submit the matter in controversy, not later than fourteen days after the . . . disagreement, to the secretary of state, who shall summarily decide the question, and the secretary of state's decision shall be final." However, because R.C. 3501.11(X) has not been placed at issue by the parties, we need not consider it. *See State ex rel. Grendell v. Walder*, 2022-Ohio-204, ¶ 31, fn. 1 (declining to decide an issue raised by amici curiae in view of "the general rule that an amicus curiae may not raise an issue not raised by the parties").

not define the word "vacancy," but that term ordinarily means "[t]he quality, state, or condition of being unoccupied, [especially] in reference to an office . . . ." *Black's Law Dictionary* (12th Ed. 2024). In contrast, a "recusal" is ordinarily meant to describe "[r]emoval of oneself as judge or policy-maker in a particular matter, [especially] because of a conflict of interest." *Id.* The facts of this case plainly establish that Helvey, Leneghan, and Watkins effected a recusal, for they all removed themselves from a particular matter—namely, Dunn's protest and challenge. Tellingly, respondents do not argue that there is currently an *unoccupied* seat on the board that needs to be filled.

{¶ 17} Turning to Dunn's argument, the United States Supreme Court has described the "Rule of Necessity" as originating from the early common law and having "been consistently applied in this country in both state and federal courts." *United States v. Will*, 449 U.S. 200, 213-214 (1980). "'The true rule unquestionably is that wherever it becomes necessary for a judge to sit even where he has an interest—where no provision is made for calling another in, or where no one else can take his place—it is his duty to hear and decide, however disagreeable it may be.'" *Id.* at 214, quoting *Philadelphia v. Fox*, 64 Pa. 169, 185 (1870).

{¶ 18} It is undisputed that we have never applied the rule of necessity in a case like this,[3] but Dunn cites instances in which the rule has been recognized by courts in other states involving challenges to the decision-making procedures of, as here, multimember, nonjudicial bodies. *See Johnson v. Case*, 243 W.Va. 382, 393-394 (2020) ("the rule of necessity required the participation of [certain] council members . . . to provide a quorum to judge the election contest"); *Finnegan v.*

---

3. Opinions issued in affidavit-of-disqualification proceedings by this court's chief justice and a former chief justice have recognized that the rule of necessity may be applied in a proper case involving a member of the judiciary. *See In re Disqualification of Beathard*, 2024-Ohio-3335, ¶ 40; *In re Disqualification of Swenski*, 2020-Ohio-4615, ¶ 10; *In re Disqualification of Reinbold*, 2017-Ohio-9427, ¶ 4; *see also* Jud.Cond.R. 2.11, Comment 3 ("The rule of necessity may override the rule of disqualification.").

*Schrader*, 91 Cal.App.4th 572, 581 (1st Dist. 2001) (observing that the rule "allows public officials to take actions they would otherwise be disqualified from taking by operation of conflict of interest rules if their disqualification would make it impossible for the public agency to fulfill one of its vital public duties"); *Siteman v. Allentown*, 695 A.2d 888, 891 (Pa.Commw. 1997) ("Because the three City Council members who did not recuse themselves did not constitute a quorum, we can invoke the Rule of Necessity to permit those members who had recused themselves to hear this case.").

{¶ 19} We agree with Dunn that it is proper to apply the rule of necessity in this case. Presently, the board lacks a quorum, which makes it impossible for the board to decide Dunn's protest and challenge. *See State ex rel. Saxon v. Kienzle*, 4 Ohio St.2d 47, 48 (1965) ("In the absence of a statute to the contrary, any action by a board requires that a quorum participate therein"). To ensure that Dunn's protest and challenge will be heard as required by R.C. 3501.39 and 3503.24, Helvey and Watkins must sit alongside Cuckler in hearing the matter.

{¶ 20} We appreciate the position of Helvey and Watkins that their participation in hearing Dunn's protest and challenge could be understood by some as conveying a perception of bias against or in favor of their fellow board member. Preserving the integrity of Ohio's electoral processes and Ohioans' confidence in government "are interests of the highest importance." *First Natl. Bank of Boston v. Bellotti*, 435 U.S. 765, 788-789 (1978). But however "'disagreeable'" it may be for Helvey and Watkins to participate in the hearing, it remains their "'duty'" to do so, *Will*, 449 U.S. at 214, quoting *Fox*, 64 Pa. at 185. Helvey's and Watkins's legitimate concerns cannot override the hearing requirements of R.C. 3501.39 and 3503.24.

### III. CONCLUSION

{¶ 21} We grant the writ of mandamus. Helvey, Watkins, and Cuckler shall proceed forthwith to hear Dunn's protest and challenge against Leneghan.

Writ granted.

_____

The Law Firm of Curt C. Hartman and Curt C. Hartman, for relator.

FBT Gibbons, L.L.P., Frank J. Reed Jr., and Anthony R. Severyn, for respondents.

Taft, Stettinius & Hollister, L.L.P., W. Stuart Dornette, and Annie M. McClellan, in support of respondents for amicus curiae, Melanie Ann Leneghan.

_____