[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Leneghan v. Delaware Cty. Bd. of Elections*, Slip Opinion No. 2026-Ohio-1598.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-1598

THE STATE EX REL. LENEGHAN *v.* DELAWARE COUNTY BOARD OF ELECTIONS ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Leneghan v. Delaware Cty. Bd. of Elections*, Slip Opinion No. 2026-Ohio-1598.]

*Mandamus—Writ sought to compel board of elections to declare that relator is a resident of Delaware County for election purposes, maintain relator's name on poll books as a properly registered voter, maintain relator's name as a candidate on the May 5, 2026 primary-election ballot, and retract and rescind any referrals to county prosecutor and secretary of state for investigation of voter fraud—Relator's request for order compelling board to retract or rescind any referrals for investigation of voter fraud dismissed because it is a request for injunctive relief rather than a proper request for mandamus relief—Writ denied as to relator's remaining mandamus claims because board did not abuse its discretion or act in clear disregard of applicable law—Writ dismissed in part and denied in part.*

(No. 2026-0468—Submitted April 29, 2026—Decided May 3, 2026.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, DETERS, HAWKINS, and SHANAHAN, JJ. BRUNNER, J., concurred, with an opinion.

**Per Curiam.**

{¶ 1} Respondent Delaware County Board of Elections sustained a challenge to relator Melanie Leneghan's voter registration and a protest to her candidacy for the Ohio Republican Party State Central Committee for the 19th State Senate District. As a result, Leneghan's voter registration was canceled and her candidacy was declared invalid. In this expedited election case, Leneghan seeks a writ of mandamus ordering the board of elections and three of its members, respondents Edward D. Helvey, Steven R. Cuckler, and Peg L. Watkins (collectively, "the board"), to (1) declare that Leneghan is a resident of Delaware County for election purposes, (2) maintain her name on the poll books as a properly registered voter, (3) maintain her name as a candidate on the May 5, 2026 primary-election ballot for the Ohio Republican Party State Central Committee, and (4) retract and rescind any referrals of Leneghan to the county prosecutor and the secretary of state for investigation of voter fraud. Also before the court is intervening respondent Velva Dunn's motion for leave to file redacted evidence under S.Ct.Prac.R. 3.12(C).

{¶ 2} We grant Dunn's motion for leave to file redacted evidence. With respect to Leneghan's mandamus claims, we dismiss Leneghan's request for an order compelling the board to retract or rescind any referrals for investigation of voter fraud because that is a request for injunctive relief rather than a proper request for mandamus relief. As to Leneghan's remaining mandamus claims, we deny the

writ because the board did not abuse its discretion or act in clear disregard of applicable law in concluding that Leneghan does not have a fixed habitation in Delaware County for purposes of voter registration under R.C. 3503.02 or for purposes of election to the Ohio Republican Party State Central Committee for the 19th State Senate District.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Challenge to Leneghan's Right to Vote and Candidacy

{¶ 3} Leneghan is currently a member of the Delaware County Board of Elections, a post to which she was appointed in March 2025. She has also been certified to the ballot as a candidate for the Ohio Republican Party State Central Committee for the 19th State Senate District in the May 5, 2026 primary election.

{¶ 4} On February 20, 2026, Dunn filed with the board of elections a protest against Leneghan's candidacy and to Leneghan's voter registration. In the protest, Dunn contended that Leneghan lives in South Carolina, where Leneghan and her husband own property and where one of the Leneghans' daughters attends college.

{¶ 5} The board of elections scheduled a hearing on Dunn's protest for March 5, 2026, but the hearing did not proceed because three of the board of elections' four members (including Leneghan) recused themselves from the matter, depriving the board of elections of a quorum. *State ex rel. Dunn v. Delaware Cty. Bd. of Elections*, 2026-Ohio-1084, ¶ 4, 7. In *Dunn*, we granted a writ of mandamus ordering Helvey, Cuckler, and Watkins to hold a hearing on Dunn's protest against Leneghan's candidacy and challenge to Leneghan's right to vote in Delaware County, as required by R.C. 3501.39 and 3503.24, respectively. *Id.* at ¶ 19-21.

{¶ 6} In compliance with *Dunn*, the board held an eight-hour hearing on April 10.

### B. Evidence Presented at the Hearing

{¶ 7} At the April 10 hearing, Leneghan testified that she and her husband sold their Delaware County home on January 7, 2025. They moved out 10 days

later and traveled to Dallas, Texas, where they lived for the next month because Leneghan was required to be there for work purposes.

{¶ 8} Sometime in January 2025, Leneghan contacted her friend Julie Keevins, who lives in Delaware, Ohio with her husband. Leneghan asked if she could use the Keevins' residence "as her residence" and stay there "when [Leneghan] was in town for business." According to Leneghan, she needed "an address" to use as her "residency." Keevins agreed to Leneghan's request, prepared a guest suite in the home for Leneghan's use, and provided Leneghan with the access codes and keys necessary to enter the home. Leneghan, however, never moved into or spent even one night in the Keevins' home.

{¶ 9} On January 23, 2025, while Leneghan was living in Dallas, the Executive Committee of the Delaware County Republican Party recommended Leneghan to the secretary of state for appointment to the board of elections. Less than two weeks later, Leneghan updated her Delaware County voter registration, listing the Keevins' address as her residence address and a different address in Galena, Ohio, as her mailing address. The Galena address was the residence of Catherine Nelson, another friend of Leneghan's. Leneghan explained that because Keevins and her husband were often in Florida during the winter, she wanted Nelson to receive her mail.

{¶ 10} On February 14, 2025, the secretary of state formally appointed Leneghan to the board of elections. From February 2025 through November 2025, Leneghan continued to use the Keevins' Delaware address as her voter-registration address, while having her mail sent to Nelson's address in Galena. Leneghan voted in the May 2025 primary and November 2025 general election while registered at the Keevins' address. But Leneghan admitted that she never moved into the Keevins' home, stating only that she intended to eventually do so.

{¶ 11} On December 2, 2025, Leneghan updated her voter registration in Delaware County to list Nelson's Galena address as her residence. Leneghan

4

testified that she moved into Nelson's home in late November 2025. Leneghan asserted that she moved to Galena from the Keevins' address in Delaware, even though she had never actually lived at the Keevins' address, because that was where she had previously intended to return. Since late November 2025, Leneghan testified, she stays at the Galena home "at least half the time," with the rest of the time spent either traveling for work or visiting family. Leneghan further indicated that her husband has never spent a night at the Galena address but that they had moved some of their things into the Galena home.

{¶ 12} Shortly after changing her voter registration address to Nelson's Galena address, Leneghan filed her petition with the board of elections to become a candidate for the Ohio Republican Party State Central Committee representing the 19th State Senate District (which includes Delaware County) on the May 5, 2026 primary-election ballot. On the petition, Leneghan listed Nelson's Galena address as her voting residence address.

{¶ 13} In March 2026, after Dunn filed her challenge to Leneghan's voter registration and candidacy, Nelson transferred her Galena property to herself and Leneghan as joint owners with right of survivorship. Leneghan did not pay for the property interest she acquired. Before that transfer, Nelson had sole ownership of the Galena home where Leneghan had registered to vote. According to Leneghan, she and Nelson are "very good friends" and they put the house in Leneghan's name "because that's where [she has] been living" since November 2025.

{¶ 14} At the conclusion of the hearing, the board voted two to one (with Leneghan not participating) to refer Leneghan to the county prosecutor and the secretary of state based on Leneghan having been registered to vote at the Keevins' Delaware address without ever having lived there. By the same two-to-one vote, the board voted to sustain Dunn's protest, cancel Leneghan's voter registration in Delaware County, and remove her as a candidate for the Ohio Republican Party State Central Committee. In explaining his vote to sustain the protest, Helvey

expressed that he "had a lot of trouble with the lack of clear answers from [Leneghan]," which had a negative impact on her credibility. Watkins added that there was a lack of clear evidence that Leneghan had moved into Nelson's home in Galena and that Leneghan's "intention to do something does not tell us where you lay your head at night [s]o I think that we need to go with the behavior, rather than what someone intends to do in the future."

### C. Leneghan Files This Action

{¶ 15} Leneghan filed this expedited election action on April 14. We issued an expedited case schedule, 2026-Ohio-1370, and granted Dunn's motion to intervene as a respondent, 2026-Ohio-1421. The parties have timely filed evidence and merit briefs. Attorney General Dave Yost has filed an amicus brief in support of the board, urging denial of the writ.

## II. ANALYSIS

### A. Motion for Leave to File Redacted Evidence

{¶ 16} One day after filing her evidence in this case, Dunn filed a motion for leave to file redacted evidence, along with a copy of the evidence with redactions. Dunn states that she inadvertently filed her original evidence without redacting certain personal identifying information. No party has opposed Dunn's motion. We grant Dunn's motion under S.Ct.Prac.R. 3.12(B)(1) and deem filed the redacted evidence that Dunn submitted with her motion for leave . The clerk shall seal Dunn's original evidence filed on April 22, 2026.

### B. Leneghan's Requested Relief in Mandamus

{¶ 17} As a threshold matter, Dunn argues that Leneghan's complaint should be dismissed for want of jurisdiction because it does not seek proper relief in mandamus. Dunn is partly correct.

{¶ 18} This court lacks jurisdiction over complaints in mandamus if the allegations establish that the relator is actually requesting relief in the nature of a declaratory judgment and a prohibitory injunction. *State ex rel. Knowlton v. Noble*

*Cty. Bd. of Elections*, 2010-Ohio-4450, ¶ 29. We have applied this rule to expedited election cases "by examining the complaint to determine whether it actually seeks to prevent, rather than compel, official action." *State ex rel. Evans v. Blackwell*, 2006-Ohio-5439, ¶ 20.

{¶ 19} Leneghan's complaint asks for a writ of mandamus to compel the board to (1) declare that she is a resident of Delaware County for election purposes, (2) maintain her name on the poll books as a properly registered voter, (3) maintain her name as a candidate on the May 5, 2026 primary-election ballot for the Ohio Republican Party State Central Committee, and (4) retract and rescind any referrals of her to the county prosecutor and the secretary of state for investigation of voter fraud. Though the requested relief is couched in affirmative duties, Dunn argues that Leneghan is really asking for a declaratory judgment that she is a Delaware County resident, a prohibitory injunction precluding the board from canceling her voter registration and invalidating her candidacy, and a prohibitory injunction precluding the board from referring her to authorities for investigation of voter fraud.

{¶ 20} Dunn's argument for dismissal has merit with respect to Leneghan's request for a writ of mandamus ordering the board to "retract[] and rescind[] any referrals for voter fraud." This branch of Leneghan's prayer for relief is effectively a request for a prohibitory injunction to prevent the board from carrying out its decision to refer to the authorities the matter of Leneghan's use of the Keevins' address for voting purposes when she admitted that she never lived there. Leneghan seeks to prohibit rather than compel official action in this respect. Thus, her request for this relief does not sound in mandamus. *See Knowlton* at ¶ 29.

{¶ 21} Dunn's argument for dismissal is without merit with respect to the other branches of Leneghan's prayer for relief. We have recognized mandamus as a proper remedy to seek reinstatement as a candidate after a board of elections has sustained a protest and removed the candidate from the ballot. *See State ex rel.*

*O'Neill v. Athens Cty. Bd. of Elections*, 2020-Ohio-1476, ¶ 7-8, 34; *State ex rel. Bender v. Franklin Cty. Bd. of Elections*, 2019-Ohio-2854, ¶ 17. We have also recognized mandamus as a proper remedy to order a board of elections to maintain a voter's name on the poll books as a properly registered voter after a challenge to the voter's registration was sustained. *See State ex rel. Husted v. Brunner*, 2009-Ohio-5327, ¶ 1, 9.

{¶ 22} Accordingly, we dismiss Leneghan's claim for a writ of mandamus to prevent the board from referring her to the county prosecutor and the secretary of state for investigation of voter fraud. Leneghan's other claims for relief are properly brought in mandamus but fail on the merits for the reasons set forth below.

### C. Mandamus

{¶ 23} To be entitled to a writ of mandamus, Leneghan must prove by clear and convincing evidence (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the board to provide that relief, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 2012-Ohio-69, ¶ 6. The third element is satisfied in this case due to the proximity of the May primary election. *See State ex rel. New Carlisle v. Clark Cty. Bd. of Elections*, 2025-Ohio-814, ¶ 10 (election was less than two months away). To satisfy the first two elements, Leneghan must show that the board engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable law. *State ex rel. Hildreth v. LaRose*, 2023-Ohio-3667, ¶ 10. Leneghan does not allege fraud or corruption, so she must prove by clear and convincing evidence that the board abused its discretion or acted in clear disregard of applicable law. *State ex rel. Scott v. Franklin Cty. Bd. of Elections*, 2014-Ohio-1685, ¶ 14, 16. To prove an abuse of discretion, Leneghan must demonstrate that the board acted unreasonably, arbitrarily, or unconscionably. *State ex rel. McCann v. Delaware Cty. Bd. of Elections*, 2018-Ohio-3342, ¶ 12.

**{¶ 24}** R.C. 3503.02 sets forth the rules for determining a person's residence for purposes of voter registration. We also apply R.C. 3503.02 in election cases involving candidate-residence issues. *State ex rel. Morris v. Stark Cty. Bd. of Elections*, 2015-Ohio-3659, ¶ 23. As it relates to Leneghan's arguments in this case, R.C. 3503.02 states:

> All registrars and precinct election officials, in determining the residence of a person offering to register or vote, shall be governed by the following rules:
>
> (A) That place shall be considered the residence of a person in which the person's habitation is fixed and to which, whenever the person is absent, the person has the intention of returning.
>
> (B) A person shall not be considered to have lost the person's residence who leaves the person's home and goes into another state or county of this state, for temporary purposes only, with the intention of returning.
>
> (C) A person shall not be considered to have gained a residence in any county of this state into which the person comes for temporary purposes only, without the intention of making such county the permanent place of abode.
>
> (D) The place where the family of a married person resides shall be considered to be the person's place of residence; except that when the spouses have separated and live apart, the place where such a spouse resides the length of time required to entitle a person to vote shall be considered to be the spouse's place of residence.

(E) If a person removes to another state with the intention of making such state the person's residence, the person shall be considered to have lost the person's residence in this state.

(F) Except as otherwise provided in division (G) of this section, if a person removes from this state and continuously resides outside this state for a period of four years or more, the person shall be considered to have lost the person's residence in this state, notwithstanding the fact that the person may entertain an intention to return at some future period.

(G)(1) If a person removes from this state to engage in the services of the United States government, the person shall not be considered to have lost the person's residence in this state, and likewise should the person enter the employment of the state, the place where such person resided at the time of the person's removal shall be considered to be the person's place of residence.

. . .

(H) If a person goes into another state and while there exercises the right of a citizen by voting, the person shall be considered to have lost the person's residence in this state.

(I) If a person does not have a fixed place of habitation, but has a shelter or other location at which the person has been a consistent or regular inhabitant and to which the person has the intention of returning, that shelter or other location shall be deemed the person's residence for the purpose of registering to vote.

{¶ 25} "Because of the sometimes conflicting nature of these sections, when multiple sections are applicable . . . it is difficult to find by clear and convincing evidence that a person is not a resident of the county claimed," and

therefore "great weight must be accorded to the person's claimed voting residence." *Husted*, 2009-Ohio-5327, at ¶ 27. Leneghan seizes on this principle, arguing that the board abused its discretion and acted in clear disregard of applicable law by not giving due weight to her stated intent to reside in Delaware County. In particular, Leneghan is critical of Watkins, who, when she voted to sustain Dunn's protest at the hearing, stated: "[Y]our intention to do something does not tell us where you lay your head at night [s]o I think that we need to go with the behavior, rather than what someone intends to do in the future."

### 1. Leneghan's "Intent" to Reside in Delaware County

{¶ 26} As set forth above, R.C. 3503.02(A) states that the residence of a person offering to register or vote "shall be considered the residence of a person in which *the person's habitation is fixed* and to which, whenever the person is absent, *the person has the intention of returning*." (Emphasis added.) "While the remainder of R.C. 3503.02 sets forth additional considerations that are applicable in some cases, '[the] statute emphasizes the person's intent to make a place a fixed or permanent place of abode.' " (Bracketed text in original.) *O'Neill*, 2020-Ohio-1476, at ¶ 14, quoting *State ex rel. Duncan v. Portage Cty. Bd. of Elections*, 2007-Ohio-5346, ¶ 11.

{¶ 27} Leneghan's principal argument focuses on her intent to return to Delaware County for purposes of her voting residence; she argues that the board did not correctly heed her stated intent. The problem with Leneghan's "intent" argument is that she glosses over the requirement that intent must be tied to a fixed "habitation." A person's "intention of returning" must be tied to a fixed habitation, not simply to the county in general. *See Duncan* at ¶ 11 (R.C. 3503.02 "emphasizes the person's intent to make a place a fixed or permanent *place of abode*" (emphasis added)); *Husted* at ¶ 30 (noting that the candidate still had a home in Kettering, which is where he intended to return). And in this case, the board did not abuse its

discretion or act in clear disregard of applicable law in determining that Leneghan did not have a fixed habitation in Delaware County.

{¶ 28} "Although we repeatedly have emphasized that a person's declared intent to reside in a particular place is a significant factor in determining the person's residency," a person's own statements are not conclusive "in the face of conflicting evidence." *State ex rel. Bobovnyik v. Mahoning Cty. Bd. of Elections*, 2020-Ohio-4003, ¶ 20. In this case, the evidence before the board showed that Leneghan and her husband sold their Delaware County home in January 2025. After moving out of their home, Leneghan and her husband spent time living in Dallas, Texas, for business purposes, in South Carolina at a residential property she and her husband owned, and in Columbus and Cleveland while taking care of elderly family members. There was testimony that Leneghan moved some personal belongings to two properties she and her husband owned in South Carolina. But there was no evidence of Leneghan having a fixed habitation *in Delaware County* between February 2025 and November 2025. Though Leneghan registered to vote using the Keevins' Delaware address, she admitted that she never lived at that address. Thus, from at least January 2025 to late November 2025, there is no evidence of Leneghan having a fixed habitation of any kind in Delaware County for purposes of establishing a voting residence.

{¶ 29} Whatever occurred in the nine-month period after she sold her Delaware County home, Leneghan argues that she presently resides in Galena, where she says she has lived since the end of November 2025 and where she says she intends to return whenever she is away. In this case, however, the board did not abuse its discretion in deciding that Nelson's home was not Leneghan's "place of abode."

{¶ 30} "When the evidence is not one-sided, a board of elections has discretion to consider a witness's credibility and assign weight to the evidence accordingly." *Bobovnyik* at ¶ 20. In this case, Helvey and Watkins expressed

reservations about Leneghan's credibility. Those reservations were not unfounded. Though claiming that she lives at Nelson's Galena home, Leneghan was far from clear about how often she was there. In response to a question asking her to detail how many days or nights she spent at the Galena property, Leneghan testified that she stayed there "whenever [she's] here," and estimated that she lived there "half the time" since November 2025. She also did not respond clearly to questions about how much of her belongings she had moved to the home. Moreover, Leneghan's husband, who registered to vote at the Galena address in August 2025, has, by Leneghan's own admission, never spent a night at the house.

{¶ 31} Finally, given Leneghan's previous registration to vote using the Keevins' address in Delaware—a place at which Leneghan admitted she has never lived—it was reasonable for board members to question Leneghan's credibility with respect to the Galena address being Leneghan's bona fide residence address. Moreover, there were additional reasons for the board members to question Leneghan's credibility regarding whether she resided in Galena. With Nelson not appearing before the board to testify, despite having been subpoenaed, the board was deprived of learning whether Nelson could corroborate if Leneghan lived in Nelson's home, as well as the reasons behind Nelson's transfer of an ownership interest in the property after Dunn filed her challenge to Leneghan's voter registration. And with evidence in the record that Nelson had been advised *by Leneghan* to object to the subpoena and not appear at the hearing, it was reasonable for the board to have legitimate questions about Leneghan's credibility.

{¶ 32} We will not substitute our judgment for that of a board of elections if there is conflicting evidence on an issue. *State ex rel. Ross v. Crawford Cty. Bd. of Elections*, 2010-Ohio-2167, ¶ 41. We have applied this principle to deny writs challenging decisions of boards of elections on residence issues. *Id.*, citing *State ex rel. Stine v. Brown Cty. Bd. of Elections*, 2004-Ohio-771, ¶ 21 and *State ex rel. Duncan v. Portage Cty. Bd. of Elections*, 2007-Ohio-5346, ¶ 16. And here,

notwithstanding Leneghan's testimony that she intends to make Delaware County her permanent residence, the board did not abuse its discretion or act in clear disregard of applicable law in concluding that her intent was not tethered to a fixed place of habitation for purposes of R.C. 3503.02(A).

*2. Remaining Provisions of R.C. 3503.02*

{¶ 33} Leneghan argues that R.C. 3503.02(B) through (I) cut in her favor and militate in favor of granting the writ. However, these provisions either cut *against* Leneghan or are irrelevant.

{¶ 34} R.C. 3503.02(B) states that a person "shall not be considered to have lost the person's residence" when the person "leaves the person's home and goes into another state or county . . . for temporary purposes only, with the intention of returning." This provision does not apply, much less favor Leneghan, because when Leneghan and her husband sold their home in January 2025 there was no "home" for them to return to.

{¶ 35} R.C. 3503.02(C) provides that a person shall not be considered to have gained a residence in another county "into which the person comes for temporary purposes only." Leneghan argues that she left Delaware County only on a temporary basis. But this provision is inapplicable here. The board did not decide that Leneghan gained residence in another county; rather, it sustained Dunn's protest because it found that Leneghan had not established a fixed habitation in Delaware County after selling and moving out of her home in January 2025.

{¶ 36} R.C. 3503.02(D) provides that the place "where the family of a married person resides shall be considered to be the person's place of residence" except when the spouses are separated and live apart. Leneghan argues that this provision cuts in her favor, but we fail to see how. The evidence at the hearing showed that Leneghan's husband has never resided at the Galena address that Leneghan now claims as her voting residence. Thus, to the extent that R.C.

14

3503.02(D) is relevant, it favors the conclusion that Leneghan does *not* reside in Galena.

{¶ 37} R.C. 3503.02(E) and (F) apply to a person who moves to another state. Because Leneghan has neither established residence in another state nor lived continuously in another state for four years or more, she argues that she has not lost her residence in this State. But even if Leneghan is not considered a resident of another state, it still does not establish that Leneghan has a fixed habitation in Delaware County for voting purposes.

{¶ 38} R.C. 3503.02(G)(1) provides that a person does not lose her residence in this State when she leaves to "enter the employment of the state." This provision is inapplicable; there is no evidence that Leneghan left Ohio because of the obligations of state employment.

{¶ 39} R.C. 3503.02(H) applies to person who has voted in another state. Leneghan argues that she has not voted elsewhere, so she has therefore not lost her right to vote in Ohio. But the fact that Leneghan has not voted in another state says nothing of whether she has a fixed habitation for purposes of being properly registered in Delaware County. R.C. 3503.02(H) is of no significance here.

{¶ 40} Finally, R.C. 3503.02(I) provides that "[i]f a person does not have a fixed place of habitation, but has a shelter or other location at which the person has been a consistent or regular inhabitant and to which the person has the intention of returning, that shelter or other location shall be deemed the person's residence for the purpose of registering to vote." Leneghan suggests that if the board did not deem her to have "a traditional home address," then this provision dictates that her intent to return to Delaware County is conclusive. This argument is without merit. As the board aptly notes in its merit brief, the language of R.C. 3503.02(I) would appear to apply to persons who are homeless. And Leneghan does not explain why this provision would apply to her when she now claims to have a home address in Galena.

**{¶ 41}** In sum, the residence-determination rules in R.C. 3503.02(B) through (I) are either inapplicable to this case or do not favor a conclusion that Leneghan has a valid voting residence address in Delaware County. The board did not abuse its discretion or act in clear disregard of applicable law in determining that Leneghan does not reside in Delaware County for purposes of voter registration under R.C. 3503.02.

### 3. *The Board Did Not Shift the Burden of Proof*

**{¶ 42}** Leneghan argues that the board erred by shifting the burden of proof at the hearing from Dunn to her. She contends that during the hearing, Watkins stated on the record that Leneghan's testimony "didn't seem convincing enough" and that there was not "other clear evidence" that Leneghan had moved into the Galena address where she now claims to live.

**{¶ 43}** Leneghan's argument misconstrues the record. In context, Watkins was not commenting on Leneghan's evidence, much less Leneghan's failure to meet a burden of proof. Indeed, it was Dunn who called Leneghan as a witness to elicit Leneghan's testimony about her Delaware County residency (or lack thereof). Watkins's comments on the record cast doubt on Leneghan's credibility on the issue of her residency. And it is within the board's purview to weigh the credibility of a witness. *Bobovnyik*, 2020-Ohio-4003, at ¶ 20.

## III. CONCLUSION

**{¶ 44}** We grant Dunn's motion for leave to file redacted evidence, deem her redacted evidence filed, and order the clerk to seal Dunn's evidence filed on April 22, 2026. We dismiss Leneghan's request for a writ of mandamus asking that the board retract and rescind any referrals to the county prosecutor and the secretary of state for investigation of voter fraud because that request is one for a prohibitory injunction. We deny the writ as to Leneghan's remaining mandamus claims because the board did not abuse its discretion or act in clear disregard of applicable law in canceling Leneghan's voter registration or invalidating her candidacy.

Writ dismissed in part
and denied in part.

_____

**BRUNNER, J., concurring.**

{¶ 45} The right to vote is fundamental and should be fiercely guarded by all. *See League of Women Voters of Ohio v. Ohio Redistricting Comm.*, 2022-Ohio-65, ¶ 153 (Brunner, J., concurring) (describing voter protections). For these reasons, cancellation of a voter's registration should be done with great caution and only after thorough evaluation.

{¶ 46} Respondent Delaware County Board of Elections was required to determine as a matter of law and under the facts whether relator, Melanie Leneghan, was a qualified elector under Ohio Const., art. V, § 1, and whether she was properly registered to vote at her claimed voter residence according to R.C. 3503.02. The hearing that we compelled the board to conduct, *see State ex rel. Dunn v. Delaware Cty. Bd. of Elections*, 2026-Ohio-1084, was for this important purpose. But Leneghan interfered with the board's efforts to make a full factual determination when she advised subpoenaed witnesses that they did not need to appear.

{¶ 47} Leneghan admitted at the hearing that she told her two daughters and three friends whose addresses she used as her voting residence since February 2025 that they had the right to object to the subpoenas issued to them by the board and did not have to appear at the hearing. As a member of the board, Leneghan either knew or should have known that this advice was incorrect.

{¶ 48} By encouraging the subpoenaed witnesses to object and not appear, Leneghan intentionally interfered with the board's truth-seeking function and ability to thoroughly examine the circumstances supporting the protest filed by intervening respondent, Velva Dunn. This intentional interference, combined with the amount of conflicting documentary and testimonial evidence about where Leneghan intended to live and where she had been living, makes this case

exceptional. Therefore, although cancellation of a voter's registration should be done with great caution, I agree with today's decision that the board did not abuse its discretion or act in clear disregard of applicable law when it sustained Dunn's protest.

_____

Taft Stettinius & Hollister L.L.P., W. Stuart Dornette, and Annie M. McClellan, for relator.

FBT Gibbons L.L.P., Frank J. Reed Jr., and Anthony R. Severyn, for respondents.

The Law Firm of Curt C. Hartman and Curt C. Hartman, for intervening respondent.

Dave Yost, Attorney General, and Stephen P. Tabatowski and Julie M. Pfeiffer, Assistant Attorneys General, in support of respondents for amicus curiae, Ohio Attorney General Dave Yost.

_____