**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Hicks v. Adams Cty. Bd. of Elections*, Slip Opinion No. 2026-Ohio-1274.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-1274

THE STATE EX REL. HICKS *v.* ADAMS COUNTY BOARD OF ELECTIONS ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Hicks v. Adams Cty. Bd. of Elections*, Slip Opinion No. 2026-Ohio-1274.]**

*Elections—Mandamus—Writ sought to order board of elections to hold a hearing under R.C. 3503.24(B) on elector's challenge to prosecutor's voter registration—Claim not barred by claim preclusion, because (1) new challenge and denial by the board constitute a separate transaction from the initial challenge underlying an earlier mandamus action, (2) absence of a required quasi-judicial hearing distinguishes this case from authorities supporting claim preclusion, and (3) fairness and justice preclude rigid application of res judicata when the underlying dispute has never been adjudicated on the merits—Claim not barred by issue preclusion, because no tribunal has actually litigated or determined the factual question of residency—Board abused its discretion and acted in clear disregard of R.C. 3503.24(B) by denying elector's challenge without a hearing when the board's records were insufficient to resolve the challenge—R.C.*

*3503.24(A) confers standing on any qualified Ohio elector to challenge another elector's voter registration—Writ granted ordering board to hold hearing on challenge within ten days.*

(No. 2025-1359—Submitted November 21, 2025—Decided April 10, 2026.)

IN MANDAMUS.

_____

LUCCI, J., authored the opinion of the court, which FISCHER, Acting C.J., and ZMUDA, BRUNNER, WAITE, MILLER, and SHANAHAN, JJ., joined. GENE A. ZMUDA, J., of the Sixth District Court of Appeals, sat for KENNEDY, C.J. EUGENE A. LUCCI, J., of the Eleventh District Court of Appeals, sat for DEWINE, J. CHERYL L. WAITE, J., of the Seventh District Court of Appeals, sat for DETERS, J. MARK C. MILLER, J., of the Third District Court of Appeals, sat for HAWKINS, J.

**LUCCI, J.**

**{¶ 1}** Relator, Christopher R. Hicks, contends that Adams County Prosecuting Attorney Aaron Evans Haslam is not properly registered to vote in Adams County. In an earlier case, we denied Hicks's request for a writ of mandamus ordering the Adams County Board of Elections to cancel Haslam's voter registration outright. *State ex rel. Hicks v. Adams Cty. Bd. of Elections*, 2025-Ohio-4582, ¶ 31 ("*Hicks I*"). And we declined to consider Hicks's alternative request in his merit brief for a writ of mandamus ordering the board to hold a hearing on his challenge to Haslam's voter registration because Hicks had not specifically sought that relief in his complaint. *Id.* at ¶ 27, 30.

**{¶ 2}** After our decision in *Hicks I*, Hicks filed a new challenge to Haslam's voter registration in Adams County under R.C. 3503.24(A), asking the board to hold a hearing on the challenge under R.C. 3503.24(B). The board again denied Hicks's challenge based solely on a review of its records. Hicks now returns to this court seeking mandamus relief against respondents, the Adams County Board of

Elections; its director, Stephanie Lewis; its deputy director, Emilee McCann; its chairperson, Carol Knauff; and its board members, Donna Gray, Mark Tolle, and Keith Swearingen (collectively, "the board"). Hicks asks for a writ of mandamus ordering the board to conduct a hearing on his challenge to Haslam's right to vote in Adams County. Hicks has also filed an unopposed motion for leave to file rebuttal evidence. For its part, the board argues that this action is barred by res judicata and that Hicks lacks standing. Additionally, in its merit brief the board asks us to sanction Hicks for what it calls "his continued abusive filings."

{¶ 3} We hold that neither claim preclusion nor issue preclusion bars this action and that Hicks has standing. On the merits, we hold that the board abused its discretion and acted in clear disregard of R.C. 3503.24(B) by denying Hicks's challenge without holding a hearing when its own records were insufficient to resolve the challenge. We therefore grant a writ of mandamus ordering the board to hold a hearing on Hicks's October 3, 2025 challenge to Haslam's voter registration. We grant Hicks's motion for leave to file rebuttal evidence as to attachments M and N, and we deny the board's request for sanctions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Hicks's First Challenge to Haslam's Voter Registration

{¶ 4} In July 2023, Haslam was appointed to the office of Adams County Prosecuting Attorney to serve the remainder of the term vacated by C. David Kelley, who had retired. According to board records, Haslam registered to vote in Adams County using an apartment address in West Union on May 15, 2023—less than two months before his appointment as county prosecutor. Before that, Haslam had been registered to vote in Hamilton County since July 2014. Haslam was later elected to a full term as county prosecutor at the November 2024 general election.

{¶ 5} On August 11, 2025, Hicks filed with the board a challenge to Haslam's right to vote in Adams County. Hicks is a qualified elector residing in Clermont County, and accordingly, he asserted that he has standing under R.C.

3503.24(A) to challenge Haslam's right to vote in Adams County. Hicks alleged in his challenge that Haslam "falsely claims" that the apartment in West Union is "his fixed/permanent address" when Haslam actually resides at a Cincinnati address in Hamilton County.

{¶ 6} At its regular meeting that same day, the board unanimously denied Hicks's challenge based solely on a review of its records.

### B. Hicks's Challenge to the Voter Registration of Haslam's Wife

{¶ 7} After the board denied Hicks's first challenge to Haslam's right to vote in Adams County, Hicks challenged the right of Haslam's wife, Christine Barrett Haslam, to vote in Hamilton County. Mrs. Haslam is registered to vote at the address in Cincinnati where Hicks alleges that the Haslam family actually lives. Hicks used the board's denial of his challenge to Aaron Haslam's voter registration as the basis of his challenge to Mrs. Haslam's voter registration. The Hamilton County Board of Elections voted three to zero (with one member not present) to deny Hicks's challenge to Mrs. Haslam's registration.

### C. *Hicks I*

{¶ 8} On August 26, 2025, after both his voter-registration challenges had been denied, Hicks filed an expedited election case in this court under S.Ct.Prac.R. 12.08, seeking a writ of mandamus ordering the board to cancel Haslam's voter registration in Adams County. In a unanimous opinion, this court denied the writ because Hicks did not show clear entitlement to the cancellation of Haslam's registration, which was the only mandamus relief he sought in the complaint. *Hicks I*, 2025-Ohio-4582, at ¶ 25, 32. Though Hicks sought alternative relief in his merit brief, namely, a remand to the board for a hearing on his challenge, we declined to grant that relief because Hicks had not requested it in the complaint. *Id.* at ¶ 27-31; *see also* S.Ct.Prac.R. 12.02(B)(3) ("All relief sought" in an original action "shall be set forth in the complaint.").

### D. Hicks's Second Challenge to Haslam's Voter Registration

{¶ 9} On October 3, 2025, the day after we denied the writ in *Hicks I*, Hicks filed with the board a second challenge to Haslam's voter registration in Adams County. Just as in his first challenge, Hicks contended that Haslam's legal residence is with his wife and children at the family's home in Cincinnati, Hamilton County. According to Hicks, the residence at which Haslam claims to live in Adams County is "an efficiency apartment" that "is not where he intends to make a permanent abode now or ever." Hicks contended that the apartment is a "sham address" for the sole purpose of allowing Haslam to hold elected office in Adams County. Haslam's true legal residence, says Hicks, "is with his wife and children in Hamilton County."

{¶ 10} In his October 2025 challenge, Hicks repeated many of the factual allegations that he made in his August 2025 challenge. He juxtaposed the home where Haslam's wife and children live in Cincinnati—which has over 4,000 square feet of living space and is appraised at nearly $1.3 million—with the relatively modest two-unit apartment building in Adams County where Haslam claims to reside, which is appraised at $132,100. Hicks again submitted photographs of two automobiles purportedly owned by Haslam, one of which had a license plate with a Hamilton County sticker and another that, according to Hicks, "once had a Hamilton County sticker that has since been removed but not replaced." Hicks also noted that in Haslam's most recent filing with the Ohio Ethics Commission, filed April 7, 2025, Haslam disclosed (1) that his wife and children reside in his household, (2) that he has business interests in Hamilton County, and (3) that he has board memberships in Hamilton County organizations. Hicks also obtained water bills and water-usage records for the apartment that Haslam contends is his residence. Hicks asserted that his analysis of the water-usage data shows that a family of four does not live in the apartment.

{¶ 11} Hicks also detailed Haslam's voter-registration and residence history, documenting that Haslam was registered in Franklin County from 2011 to 2013, Adams County from 2013 to 2014, and Hamilton County from 2014 to 2023 and that Haslam registered to vote in Adams County, using the West Union apartment address, in May 2023, just 46 days before being appointed as the Adams County prosecutor. Additionally, while Haslam had previously owned properties in Adams County, property records show that by 2017, Haslam had sold those properties, and Hicks alleged that Haslam has not owned any property in the county since then.

{¶ 12} Hicks also alleged that Haslam's claimed residence at the Adams County apartment "[has] long been known to be false in Adams County political circles." In support, Hicks referred the board to the June 30, 2023 meeting at which the county commissioners approved Haslam's appointment as acting prosecutor by a two-to-one vote, but at which dissenting commissioner Diane Ward expressed doubt that Haslam actually resided at the apartment. Ward stated on the record:

> [Haslam] does not reside at the claimed address, which just happens to be the same address that [former] Prosecutor David Kelley claimed, even though he has resided in Arizona for the past several months. Mr. Haslam has not been an Adams County, Ohio resident since February 2011, and [he] should be classified as ineligible.

{¶ 13} Hicks demanded that the board hold a hearing on his challenge within 10 days, in accordance with R.C. 3503.24(B).

{¶ 14} At an October 6, 2025 meeting, the board denied Hicks's challenge based solely on a review of its records. The board reasoned that despite Haslam's leaving Adams County in the past, he has "show[n] a general pattern of returning to Adams County over the years." The board also noted that Haslam had a steady

voting record in Adams County and had signed various candidate petitions in the county. Additionally, the board noted that all mailings from the board to Haslam's West Union apartment address appeared to have been delivered. Finally, the board stated that it had considered R.C. 3503.02(D) and observed that the statutory rules for determining a person's residence for voter-registration purposes do not state that a "legal separation" is necessary for the spousal-residency exception to apply.

{¶ 15} Hicks has submitted as rebuttal evidence (which we grant Hicks leave to file as explained in Part II(A)), a video recording of the board's October 6 meeting. That video shows that the entire meeting to address Hicks's challenge lasted less than ten minutes. The board's director recited a summary of what the board's records showed and then, after asking whether the board needed to have a discussion, immediately called for a vote. Without any discussion of the allegations in Hicks's challenge or the evidence he submitted, the board voted unanimously to deny the challenge. Hicks was allowed to address the board for two minutes—but only after the board had voted. None of the evidence submitted by Hicks in his October 2025 challenge was mentioned, discussed, or considered by the board during the meeting.

### E. Hicks Files This Action

{¶ 16} Hicks filed this action on October 15, 2025,[1] seeking a writ of mandamus "commanding the Adams County Board of Elections to hold a hearing forthwith on the October 3, 2025, challenge to Aaron Evans Haslam's [voter] registration." The parties submitted evidence and briefs in accordance with the

---

1. Although the November 4, 2025 election has passed, this case is not moot. Hicks's complaint is not specific to that election; rather, he seeks a writ of mandamus ordering a hearing on his October 2025 challenge to Haslam's voter registration. Such a hearing before the board could result in the cancellation of Haslam's voter registration for future elections. *See State ex rel. Gaylor, Inc. v. Goodenow*, 2010-Ohio-1844, ¶ 11 (if it is possible for a court to grant the requested relief, the case is not moot, and a consideration of the merits is warranted). Moreover, the board does not contend that this matter should be dismissed as moot.

expedited schedule set forth in S.Ct.Prac.R. 12.08. Hicks also filed a motion for leave to file rebuttal evidence, to which the board did not respond. In its merit brief, the board requests that we sanction Hicks under S.Ct.Prac.R. 4.03.

## II. ANALYSIS

### A. Motion for Leave to File Rebuttal Evidence

{¶ 17} Hicks filed a timely motion for leave to submit rebuttal evidence. *See* S.Ct.Prac.R. 12.08(A)(2)(d). Hicks asks for leave to file attachments M through V attached to his motion, as well as his authenticating affidavit, in response to assertions that the board made in its merit brief. We grant the motion in part and deny it in part.

{¶ 18} Rebuttal evidence "is that given to explain, refute, or disprove new facts introduced into evidence by the adverse party; it becomes relevant only to challenge the evidence offered by the opponent, and its scope is limited by such evidence." *State v. McNeill*, 1998-Ohio-293, ¶ 44. We have discretion in determining whether to admit rebuttal evidence. *Hicks I*, 2025-Ohio-4582, at ¶ 14.

### 1. Attachments M and N—Videos of the October 6 Board Meeting and Hicks's Discussion with a Board Member

{¶ 19} Attachments M and N to Hicks's motion are each "unaltered digital video" taken by Hicks. Attachment M is a video of the board's October 6 meeting at which the board denied Hicks's second challenge to Haslam's voter registration. Attachment N is a video of a conversation that Hicks had two weeks later with board member Mark Tolle about the challenge. Hicks states that these videos rebut the board's contentions regarding its consideration of Hicks's challenge.

{¶ 20} Attachment M, the video of the October 6 meeting, is less than ten minutes long and shows the entirety of the meeting that day. Board Director Lewis recited a summary of what the board's records show and then, after asking whether the board needed to have a discussion, immediately called for a vote. Without any discussion of the board's records or the allegations in Hicks's challenge, the board

voted unanimously to deny the challenge. Hicks was allowed to address the board for two minutes—but only after the board had voted to deny the challenge.

{¶ 21} Attachment N is a video of Hicks approaching Tolle as the latter was walking into the board's office on October 20, 2025. Hicks asked Tolle why Tolle had not asked any questions at the October 6 meeting about the low water usage at Haslam's apartment or the registration of Haslam's vehicles in Hamilton County. Tolle responded by saying that he did not know. He told Hicks that Hicks had posed "interesting questions" and then walked away.

{¶ 22} These videos are probative evidence to rebut the board's contentions that it fully considered all the evidence Hicks had submitted related to Haslam's residency. We therefore grant Hicks leave to file attachments M and N.

*2. Attachments O and P—Rebuttal of "Conspiracy Theory"*

{¶ 23} Attachment O is a video taken by Hicks of an October 29, 2025 proceeding in the Adams County Court relating to Hicks's filing of a citizen affidavit in which he requested that Haslam be prosecuted for the alleged misdemeanor offense of failing to display a county sticker on the license plate of his vehicle. Attachment P is a motion Haslam filed in that proceeding asking that the Clermont County Prosecutor's Office be appointed as special prosecutor. Hicks argues that attachments O and P rebut the board's contention "that a conflict of interest, pursuant to outside counsel Brian Shrive, is a 'conspiracy theory.' "

{¶ 24} We deny Hicks's motion for leave to file attachments O and P. Contrary to Hicks's assertion, the board does not make any argument in its merit brief with respect to a supposed conflict of interest vis-à-vis attorney Shrive.

*3. Attachments Q and R—Documents Related to Haslam's Charitable Activities in Hamilton County*

{¶ 25} Attachments Q and R are IRS 990 forms filed in November 2024 and April 2025, respectively, for charitable organizations in Hamilton County. The former discloses Haslam as the president of one organization and the latter discloses

him as a board member of another. Hicks contends that these documents highlight Haslam's "significant leadership roles" with Hamilton County charities.

{¶ 26} We deny leave to file attachments Q and R. Hicks does not claim that these attachments rebut the board's evidence or contentions made in the board's merit brief. Rather, Hicks appears to offer these attachments, which he claims are newly discovered, to bolster his claims that Haslam's true residence is in Hamilton County. Accordingly, attachments Q and R are not proper rebuttal evidence. *See State ex rel. Brill v. Lorain Cty. Bd. of Elections*, 2024-Ohio-4990, ¶ 28.

*4. Attachments S through V—Documents Pertaining to Haslam's Other Activities*

{¶ 27} Hicks offers attachments S through V as evidence of Haslam's other activities. We deny leave to file these attachments as rebuttal evidence.

{¶ 28} Attachment S is a document that Hicks claims he requested and received from the Adams County Prosecutor's Office. The document shows payments to former Prosecutor Kelley by direct deposit from January 2022 to August 2025. Hicks claims that this document "rebuts claims in [the board's] merit brief that former Prosecutor David Kelley was merely 'a former tenant' at the same address as Haslam in West Union." Though the board did refer to Kelley as "a former tenant" at the same West Union apartment where Haslam claims to reside, the board did not argue, as Hicks implies, that Kelley was not the former prosecutor.

{¶ 29} Attachments T, U, and V are also improper rebuttal evidence. Attachment T consists of Haslam's billing records that were purportedly admitted as evidence in a federal habeas corpus case; Attachment U is a campaign-finance report of a justice of this court; and Attachment V is a notice of representation filed by Haslam's counsel in Adams County Municipal Court. None of these attachments are offered to rebut the board's evidence.

{¶ 30} In summary, we grant Hicks's motion for leave to file attachments M and N as rebuttal evidence and deny Hicks's motion with respect to attachments O through V.

### B. Res Judicata Does Not Bar This Action

{¶ 31} As a threshold matter, the board argues that this action is barred by res judicata. The board contends that our denial of the writ of mandamus in *Hicks I* has preclusive effect because Hicks has "filed a substantially duplicate filing" and there has not been a change in circumstances that would overcome res judicata. We disagree.

{¶ 32} The doctrine of res judicata encompasses two related but distinct concepts: claim preclusion and issue preclusion. *O'Nesti v. DeBartolo Realty Corp.*, 2007-Ohio-1102, ¶ 6, citing *Grava v. Parkman Twp.*, 1995-Ohio-331, ¶ 9, 13. Claim preclusion, also known as estoppel by judgment, bars subsequent actions by the same parties or their privies based on any claim arising out of a transaction that was the subject matter of a previous action. *Id.*, citing *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 1998-Ohio-435, ¶ 13. Issue preclusion, also known as collateral estoppel, "serves to prevent relitigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies." *Id.* at ¶ 7, citing *Fort Frye* at ¶ 14. As explained below, neither component of res judicata bars this action.

*1. Claim Preclusion Does Not Bar This Action*

**a. The October 2025 Challenge Constitutes a Separate Transaction**

{¶ 33} Under claim preclusion, a valid, final judgment on the merits bars subsequent actions "based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava* at ¶ 13. This court has adopted the Restatement (Second) of Judgments approach, under which a "'transaction'" is defined as a "'common nucleus of operative facts.'" *Grava* at ¶ 14, quoting 1 Restatement of the Law 2d, Judgments, § 24, Comment b (1982).

{¶ 34} *Hicks I* arose from the board's denial of Hicks's August 2025 challenge to Haslam's voter registration. This case, however, arises from a new challenge that Hicks filed on October 3, 2025—the day after this court decided *Hicks I*—and the board's denial of that challenge at its October 6 meeting. The October 2025 challenge and denial are separate administrative acts that occurred after this court issued a final judgment in *Hicks I*. They constitute a distinct transaction, notwithstanding that the underlying factual dispute about the validity of Haslam's voter registration remains the same.

{¶ 35} To frame the transaction or occurrence as broadly as "Hicks's challenge to Haslam's residency status" would encompass virtually any challenge to Haslam's voter registration at any time. That framing is too broad. Under the Restatement approach, the question is whether the claims arise out of the same "'transaction, or series of connected transactions.' " *Grava*, 1995-Ohio-331, at ¶ 14, quoting 1 Restatement of the Law 2d, Judgments, at § 24(1). A new challenge filed with an administrative agency, a new board meeting, and a new denial constitute a distinct transactional occurrence, particularly when the second challenge was filed in direct response to this court's guidance in *Hicks I* that the relief Hicks truly sought had not been properly pled. Hicks's October 2025 filing with the board, after this court's decision in *Hicks I*, addressed a new and legally distinct transaction or occurrence that was not, as a matter of time and fact, the same as the August 2025 challenge.

### b. *The Absence of a Prior Quasi-Judicial Hearing Distinguishes This Case*

{¶ 36} Even treating the two mandamus actions as arising from the same transaction, the absence of a required quasi-judicial hearing distinguishes this case from every authority on which the board relies to support its argument that res judicata bars this action. In *State ex rel. Armatas v. Plain Twp. Bd. of Zoning Appeals*, 2020-Ohio-2973, ¶ 3-4, the relator could have timely appealed the decision of the zoning inspector and obtained a hearing before the board of zoning

appeals. In *Grava*, the relator had similarly appeared before the zoning board and failed to raise all available grounds for relief in the first proceeding. *See Grava* at ¶ 17. And in *State ex rel. Tremmel v. Erie Cty. Bd. of Elections*, the board of elections conducted a full evidentiary hearing. 2009-Ohio-5773, ¶ 5, 16.

{¶ 37} Here, no such proceeding has occurred. The board denied both of Hicks's challenges without a hearing, based solely on a review of its records. The statutory process set forth in R.C. 3503.24(B)—which requires a hearing "resembling a judicial trial" when a board cannot resolve a challenge solely on its records, *Tremmel* at ¶ 16—was short-circuited by the board. When, as here, the elements of notice, a hearing, and the opportunity to present evidence are lacking, the proceeding is purely administrative and cannot generate preclusive effect. *See Garringer v. New Jasper Twp. Bd. of Zoning Appeals*, 2010-Ohio-6223, ¶ 26-27 (2d Dist.) (res judicata cannot operate to preclude a determination of fact or law based on a prior, purely administrative determination made by an administrative officer ex parte). Applying claim preclusion in this case would reward the board for its failure to follow the statutory process that Hicks properly invoked. Due process requires a more attentive procedural mechanism, which was not afforded in this case.

{¶ 38} Indeed, just days before issuing its opinion in this case, this court reaffirmed the mandatory nature of the hearing requirement under R.C. 3503.24. In *State ex rel. Dunn v. Delaware Cty. Bd. of Elections*, this court granted a writ of mandamus ordering a county board of elections to hold a hearing on a qualified elector's challenge to a board member's voter registration—a challenge in which the elector alleged that the board member did not actually reside in the county where she had registered to vote. 2026-Ohio-1084, ¶ 3, 14, 21. This court held that R.C. 3503.24 "compelled the board to move forward with a hearing" and that even legitimate concerns about the appearance of bias "cannot override the hearing requirements" of the statute. *Id.* at ¶ 13, 20. Thus, just as a board of elections may

not, by recusal, avoid holding the hearing required under R.C. 3503.24, a board may not avoid holding the hearing by summarily denying a challenge based on its records when its records are insufficient to resolve the matter.

{¶ 39} Although this court has recognized that res judicata may apply in mandamus actions, *State ex rel. Arcadia Acres v. Dept. of Job & Family Servs.*, 2009-Ohio-4176, ¶ 2, the doctrine's application to successive mandamus actions presupposes that the first proceeding afforded the relator a meaningful opportunity to litigate the underlying dispute. Here, the underlying factual question has been sidestepped at every turn.

### c. Fairness and Justice Preclude Rigid Application of Claim Preclusion

{¶ 40} This court has recognized that res judicata is not to be so rigidly applied "when fairness and justice would not support it." *State ex rel. Estate of Miles v. Piketon*, 2009-Ohio-786, ¶ 30, citing *Davis v. Wal-Mart Stores, Inc.*, 2001-Ohio-1593, ¶ 12. "The doctrine should be qualified or rejected when its application would contravene an overriding public policy or result in manifest injustice." *Jacobs v. Teledyne, Inc.*, 39 Ohio St.3d 168, 171 (1988), citing *Tipler v. E.I. duPont deNemours & Co., Inc.*, 443 F.2d 125, 128 (6th Cir. 1971).

{¶ 41} In *AJZ's Hauling, L.L.C. v. TruNorth Warranty Programs of N. Am.*, this court confirmed that an exception to res judicata may apply in "extraordinary situations," 2023-Ohio-3097, ¶ 18, while holding that res judicata bars claims of unreasonable or unjust results "when the parties had a full and fair opportunity to litigate the issue in the first instance," *id.* at ¶ 19. The "main legal thread" running through this court's decisions related to the applicability of res judicata is "the necessity of a fair opportunity to fully litigate and to be 'heard' in the due process sense." *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193, 200-201 (1983). A party seeking to overcome the application of res judicata must demonstrate that it did not have an opportunity to obtain a full and fair adjudication

of its claim in the prior proceeding. *See AJZ's Hauling* at ¶ 19. That standard has been met here.

{¶ 42} Hicks's evidence relating to the underlying dispute—whether Haslam actually resides in Adams County and therefore is properly registered to vote in that county—has never been heard by any tribunal in any proceeding. The board refused to hold a hearing on Hicks's initial challenge. This court in *Hicks I* declined to reach the merits. And in this case, the board again has avoided the factual question at the heart of the dispute. Haslam's residency has never been adjudicated; the issue has continuously been cast aside.

{¶ 43} Multiple considerations counsel against a rigid application of claim preclusion under these circumstances.

{¶ 44} First, Hicks is a pro se litigant who, from the outset, demanded a hearing before the board. As this court noted in *Hicks I*, "Hicks believed that the board itself did not maintain records that would be sufficient to sustain his challenge. His challenge therefore demanded that the board hold a hearing within ten days." *Hicks I*, 2025-Ohio-4582, at ¶ 7. But the board denied the challenge without holding a hearing. In his mandamus complaint in *Hicks I*, Hicks sought the cancellation of Haslam's voter registration rather than a remand to the board for a hearing—a pleading deficiency that this court identified. While claim preclusion is designed to incentivize parties to raise all claims in the first proceeding, permanently barring a pro se litigant's nonfrivolous claim based on a pleading error—particularly in the expedited posture of an election case under S.Ct.Prac.R. 12.08—would work a manifest injustice.

{¶ 45} Second, the board's summary denials of Hicks's challenges based solely on its review of its own records cannot constitute the kind of merits determination that would insulate Haslam's voter registration from proper review. As this court recognized in *Tremmel*, a proceeding to challenge a registered elector's right to vote under R.C. 3503.24 "must result in a hearing resembling a

judicial trial when the board cannot decide the matter solely on its records." 2009-Ohio-5773 at ¶ 16. The board's records in this case show that Haslam registered to vote using a West Union, Adams County address. But those records do nothing to address the substance of Hicks's allegations that Haslam does not actually reside at that address. Applying res judicata in this case would permit the board to expediently deny Hicks's challenge without holding a hearing and thereby avoid its statutory duty under R.C. 3503.24(B)—secure in the knowledge that any pleading defects in a subsequent mandamus action would foreclose judicial review of the matter.

{¶ 46} In our recent decision in *Dunn*, this court—in a six-to-one decision—prohibited board members from using their voluntary recusals as a means to avoid their duty to conduct a hearing. 2026-Ohio-1084 at ¶ 20-21. In this case, the board's refusal to hold a hearing on Hicks's challenge threatens the result that we prohibited in *Dunn*: the permanent foreclosure of any adjudication of the merits of a qualified elector's challenge to a registrant's voter registration.

{¶ 47} Third, the public has a strong interest in ensuring that elected officials meet residency requirements. Haslam holds the office of Adams County Prosecuting Attorney—an office that requires residence in the county under both constitutional and statutory law. The Ohio Constitution prohibits a person from being elected or appointed to any office in Ohio unless that person possesses the qualifications of an elector. Ohio Const., art. XV, § 4. To be a qualified elector, a person must reside in the county in which he or she seeks to vote. Ohio Const., art. V, § 1; *see also* R.C. 3503.02. Further, R.C. 3.15 requires that a person holding an elective office of a political subdivision, such as the office of county prosecuting attorney, be a resident of the county that he serves. If Haslam is not a bona fide resident of Adams County, he is constitutionally and statutorily ineligible to hold the office of prosecuting attorney. This is not an abstract or speculative concern— it is a live question, and a statutory mechanism exists to resolve it: namely, the

challenge and hearing process set forth in R.C. 3503.24. Yet the board has repeatedly refused to follow that process to resolve this question on the merits.

{¶ 48} Every day that Haslam resides outside Adams County, if indeed he does, constitutes a continuing violation of Ohio's voter-registration and residency laws. Allowing pleading deficiencies to shield an elected official's potentially improper voter registration from review contravenes the overriding public policy embodied in R.C. 3503.02, R.C. 3503.24, and the constitutional and statutory provisions requiring county officers to reside in the county that they serve.

{¶ 49} Perhaps the most compelling reason not to apply res judicata in this case is that it would not accomplish the very purpose the doctrine is designed to serve. "'Res judicata ensures the finality of decisions.' " *AJZ's Hauling*, 2023-Ohio-3097, at ¶ 15, quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979). It "establishes certainty in legal relations and individual rights, accords stability to judgments, and promotes the efficient use of limited judicial or quasi-judicial time and resources." *Grava*, 1995-Ohio-331, at ¶ 17. But barring this action on res judicata grounds would achieve none of those objectives.

{¶ 50} Rather, the application of res judicata in this case binds Hicks alone. It would not bind future voter-registration challengers. Under R.C. 3503.24(A), "any qualified elector" has the right to challenge a voter's registration. Nothing prevents any other qualified elector in Ohio from filing an identical challenge to Haslam's voter registration tomorrow. That new challenger would not be Hicks, would not be in privity with Hicks, and would not be bound by *Hicks I* or by a decision in this case. *See O'Nesti*, 2007-Ohio-1102, at ¶ 9, quoting *Johnson's Island, Inc. v. Danbury Twp. Bd. of Trustees*, 69 Ohio St.2d 241, 244 (1982) (mutuality of interest requires that "'the person taking advantage of the judgment would have been bound by it had the result been the opposite' "). Indeed, this court has recognized that different electors possess distinct legal standing to challenge voter registrations. *See State ex rel. Holwadel v. Hamilton Cty. Bd. of Elections*,

2015-Ohio-5306, ¶ 41.  The practical result of barring this action on res judicata grounds would not be to resolve the question of Haslam's residency but to perpetuate the uncertainty surrounding it.  This court would likely be called on to address the identical substantive issue in a future case brought by a different elector—without the benefit of any evidentiary hearing or factual record.  That outcome would serve neither judicial economy nor the public interest.

{¶ 51} Accordingly, because this action involves a separate transaction or occurrence, because no quasi-judicial proceeding has occurred in which any tribunal has considered the merits of Hicks's claim, and because fairness and justice preclude its application when the underlying dispute has never been adjudicated, claim preclusion does not bar this action.

### 2. Issue Preclusion Does Not Apply

{¶ 52} Issue preclusion applies "when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom [issue preclusion] is asserted was a party in privity with a party to the prior action."  *Thompson v. Wing*, 1994-Ohio-358, ¶ 26.  In this case, the determinative factual issue underlying Hicks's challenge—whether Haslam resides at his registered voting address in West Union, Adams County—has never been "actually and directly litigated" by anyone, in any proceeding, at any level.

{¶ 53} The board denied both Hicks's August 2025 and October 2025 challenges to Haslam's voter registration based solely on a review of its own records, without conducting a hearing.  Thus, the board never exercised quasi-judicial authority.  This court has long held that for an administrative proceeding to support the application of res judicata, it must be "of a judicial nature" and the parties must "have had an adequate opportunity to litigate the issues involved in the proceeding."  *Superior's Brand Meats, Inc. v. Lindley*, 62 Ohio St.2d 133, 135

(1980); *see also State ex rel. Schachter v. Ohio Pub. Emps. Retirement Bd.*, 2009-Ohio-1704, ¶ 29.

{¶ 54} This court has identified the earmarks of quasi-judicial proceedings with precision: notice, a hearing, and an opportunity for the introduction of evidence. *See M.J. Kelley Co. v. Cleveland*, 32 Ohio St.2d 150, 153 (1972); *see also State ex rel. Wright v. Ohio Bur. of Motor Vehicles*, 1999-Ohio-17, ¶ 7; *State ex rel. Varnau v. Wenninger*, 2011-Ohio-759, ¶ 12. When a judicial or quasi-judicial proceeding does not occur, the proceeding is purely administrative and cannot generate preclusive effect. *Garringer*, 2010-Ohio-6223, at ¶ 26 (2d Dist.); *see also Prairie Twp. Bd. of Trustees v. Ross*, 2004-Ohio-838, ¶ 13 (10th Dist.).

{¶ 55} Moreover, in *Tremmel*, this court recognized the importance of the Erie County Board of Elections' determination that there were no changed circumstances since that board's last *hearing*. 2009-Ohio-5773 at ¶ 16-17. In other words, the factual underpinnings of Tremmel's residency had not changed since the previous proceeding at which the Erie County Board had found that he was not a resident. This rationale is grounded in issue preclusion—Tremmel was barred from relitigating the factual issue of residency that the Erie County Board had previously determined against him in a quasi-judicial hearing. In this case, the board cannot invoke issue preclusion to bar Hicks's action, because the board did not make a factual determination at a quasi-judicial hearing.

{¶ 56} Moreover, this court in *Hicks I* expressly declined to reach the merits of Hicks's claims and denied the writ because the only relief Hicks had sought in his complaint was cancellation of Haslam's voter registration—relief to which Hicks had not demonstrated clear entitlement—and because the alternative relief Hicks asked for in his merit brief (a remand to the board for a hearing) was not pled in the complaint. 2025-Ohio-4582 at ¶ 25, 27-31. A prior mandamus action in which the court did not decide the issues on the merits cannot bar a subsequent action seeking a determination of the same substantive question. *See Knight v.*

*Trumbull Cty. Bd. of Elections*, 1986 WL 476, at *2 (11th Dist. Nov. 3, 1986). Issue preclusion requires the relevant issue to have been "actually and necessarily" decided. *Goodson*, 2 Ohio St.3d at 195. When differences exist in the quality or extensiveness of procedures between two proceedings, an exception to issue preclusion may be found, warranting a new determination. *See State v. Williams*, 1996-Ohio-408, ¶ 18-19 (recognizing exceptions to issue preclusion when a party lacked a full and fair opportunity to litigate an issue or when procedural differences between proceedings create unfairness); *see also State v. Wilson*, 2002-Ohio-1846, ¶ 16 (8th Dist.), *aff'd sub nom. State v. Taylor*, 2003-Ohio-5452 (recognizing that res judicata does not invariably prevent correction when the prior proceedings lacked statutory authority).

{¶ 57} In this case, the board afforded no procedures in either proceeding. And the merits of the residency issue were not reached in *Hicks I*. Therefore, issue preclusion does not apply.

### C. Hicks Has Standing

{¶ 58} The board argues that Hicks is not a "qualified elector," and thus he lacks standing to challenge Haslam's voter registration under R.C. 3503.24(A). We reject this argument.

{¶ 59} "In addition to standing authorized by common law, standing may also be conferred by statute." *ProgressOhio.org, Inc. v. JobsOhio*, 2014-Ohio-2382, ¶ 17. R.C. 3503.24(A) provides that "a challenge of the right to vote of any registered elector may be made by *any qualified elector* at the office of the board of elections not later than the thirtieth day before the day of the election." (Emphasis added.)

{¶ 60} The parties agree that R.C. 3503.24(A) confers standing, but they dispute what "any qualified elector" means. The board contends in its merit brief that the "qualified elector" must be a qualified elector *in the same county* as the registered elector being challenged. The board reasons that because "qualified

20

elector" is defined in R.C. 3501.01(N) as "a person having the qualifications provided by law to be entitled to vote" and R.C. 3503.01(A) defines those qualifications in terms of residency in a particular county and precinct, the status of "qualified elector" is county-specific. Because Hicks is a Clermont County elector, the board argues, he lacks standing to challenge Haslam's right to vote in Adams County.

**{¶ 61}** The first step in determining statutory standing is reviewing the plain language of the statute. *See Total Renal Care, Inc. v. Harris*, 2024-Ohio-5685, ¶ 13. When a statute's meaning is unambiguous, no statutory interpretation is necessary: the court must apply the statute as written. *Id*. "This court will not insert language to modify an unambiguous statute under the guise of statutory interpretation." *State ex rel. Cable News Network, Inc. v. Bellbrook-Sugarcreek Local Schools*, 2020-Ohio-5149, ¶ 11.

**{¶ 62}** R.C. 3503.24(A) is unambiguous. It says that "a challenge of the right to vote of any registered elector may be made by *any qualified elector*." (Emphasis added.) Unlike the former version of the statute, which is discussed in more detail below, the current version no longer provides that the "qualified elector" must be a qualified elector "of the county." 2016 Sub.H.B. No. 359 (effective Sept. 8, 2016) ("H.B. 359"). The General Assembly's removal of that phrase reflects a meaningful (i.e., a substantive, non-stylistic) change. This court ordinarily presumes that a substantive change to a statute's text conveys a change in meaning. *Claugus Family Farm, L.P. v. Harris*, 2025-Ohio-2807, ¶ 32.

**{¶ 63}** The legislative history confirms this interpretation. R.C. 3503.24 was amended in 2016 by H.B. 359. Before that amendment, R.C. 3503.24(A) specified that a challenge could be filed by "any qualified elector *of the county*." Former R.C. 3503.24(A), 2012 Sub.S.B. No. 295. At the same time, a separate provision permitted "any qualified elector" (without county limitation) to challenge a voter's registration. Former R.C. 3505.19, 2006 Am.Sub.H.B. No. 3. The

Legislative Service Commission noted that H.B. 359 "eliminate[d] this apparent conflict by repealing one provision and amending the other to specify that any qualified elector may file a challenge with the board of elections in person or by mail on the form prescribed by the Secretary of State." Legislative Service Commission, Final Analysis of Sub. H.B. 359, as passed by the General Assembly (2016), at 17; *see Meeks v. Papadopulos*, 62 Ohio St.2d 187, 191 (1980) (this court may refer to a Legislative Service Commission analysis when it finds such analysis "helpful and objective"). The deletion of the phrase "of the county" from R.C. 3503.24(A) was not, as the board contends, merely the removal of surplusage; it was a deliberate harmonization that clarified that any qualified Ohio elector has standing under the statute.

{¶ 64} Hicks is a qualified elector of Clermont County, Ohio. He has standing under R.C. 3503.24(A) to challenge Haslam's voter registration in Adams County.

### D. Hicks Is Entitled to a Writ of Mandamus

{¶ 65} To obtain his requested writ of mandamus, Hicks must establish by clear and convincing evidence (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the board to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *See State ex rel. White v. Franklin Cty. Bd. of Elections*, 2020-Ohio-524, ¶ 6. To establish the requisite legal right and legal duty, a relator "must prove that the board of elections engaged in fraud, conspiracy, abuse of discretion, or clear disregard of statutes or other pertinent law." *State ex rel. Allen v. Warren Cty. Bd. of Elections*, 2007-Ohio-4752, ¶ 9. These requirements must be proved by clear and convincing evidence. *State ex rel. Scott v. Franklin Cty. Bd. of Elections*, 2014-Ohio-1685, ¶ 14.

{¶ 66} Regarding the third element, although Hicks could theoretically pursue a declaratory-judgment action in common pleas court, a declaratory judgment would not give him the complete remedy he seeks unless coupled with a

mandatory injunction to compel the board to hold a hearing. "When a mandatory injunction would be needed to obtain complete relief, a declaratory-judgment action is not an adequate remedy at law and mandamus is an appropriate remedy." *State ex rel. Nauth v. Dirham*, 2020-Ohio-4208, ¶ 12. Hicks therefore lacks an adequate remedy in the ordinary course of the law and satisfies the third element.

### 1. Fraud or Corruption

{¶ 67} Citing Civ.R. 9(B), the board argues in its merit brief that Hicks's complaint contains "only a bare bones allegation of fraud" and therefore does not satisfy the rule's requirement that fraud be pleaded with particularity. We need not resolve the applicability of Civ.R. 9(B) to a mandamus action against a board of elections, because Hicks has not proved fraud or corruption. He has submitted no evidence to show that the board engaged in fraud or corruption in its decision to deny his October 2025 challenge without a hearing. However, demonstrating fraud is only one way of satisfying the clear-legal-duty and clear-legal-right elements of a mandamus claim in an election case. *See Rust v. Lucas Cty. Bd. of Elections*, 2005-Ohio-5795, ¶ 8, *overruled on other grounds by State ex rel. Ferrara v. Trumbull Cty. Bd. of Elections*, 2021-Ohio-3156, ¶ 20 (to establish mandamus, a relator "must prove that the board of elections engaged in fraud, corruption, *abuse of discretion, or clear disregard of statutes or other pertinent law*" [emphasis added]). As explained below, the board abused its discretion and acted in clear disregard of R.C. 3503.24(B).

### 2. R.C. 3503.24(B) Requires a Hearing When the Board Cannot Make a Determination Based Solely on a Review of Its Records

{¶ 68} R.C. 3503.24(B) sets forth the process that a board of elections must follow upon receipt of a challenge to an elector's right to vote. First, the board must "promptly . . . review the board's records." *Id*. If "the board is able to determine that an application or challenge should be granted or denied solely on the basis of the records maintained by the board, the board immediately shall vote to

grant or deny that application or challenge." *Id*. But "[i]f the board is not able to determine whether an application or challenge should be granted or denied solely on the basis of the records maintained by the board, the director shall promptly set a time and date for a hearing before the board." *Id.* At such a hearing, all witnesses must testify under oath, and, at the request of either party or any member of the board, the board must issue subpoenas to witnesses to appear and testify. *Id*. Under R.C. 3503.24, "a proceeding . . . to challenge a registered elector's right to vote must result in a hearing resembling a judicial trial when the board cannot decide the matter solely on its records." *Tremmel*, 2009-Ohio-5773, at ¶ 16; *see also State ex rel. Ross v. Crawford Cty. Bd. of Elections*, 2010-Ohio-2167, ¶ 16.

{¶ 69} The board argues in its merit brief that Hicks "points to no statutory or case law authority by which a hearing pursuant to R.C. 3503.24(B) is a 'right' of a challenger." The board is wrong that Hicks's argument lacks statutory and case-law support. The statute imposes a duty to convene a hearing if the board cannot resolve the challenge based on its records. R.C. 3503.24(B). The language of the statute is clear: "the director *shall* promptly set a time and date for a hearing" (emphasis added), *id*. "County boards of elections are of statutory creation, and the members thereof in the performance of their duties must comply with applicable statutory requirements." *State ex rel. Babcock v. Perkins*, 165 Ohio St. 185, 187 (1956).

{¶ 70} The critical question, then, is whether the board was "able to determine" that Hicks's challenge should be denied "solely on the basis of the records maintained by the board," R.C. 3503.24(B). The board says that it could. We disagree.

### 3. The Board's Records Are Not Determinative

{¶ 71} The board's records relating to Haslam consist of five categories of documents: (1) Haslam's voter-registration history, which shows his address changes over the years, including his registration at the West Union apartment on

May 15, 2023; (2) records relating to Haslam's appointment to the office of Adams County Prosecuting Attorney, which list the West Union apartment address—the same address used by former Prosecutor Kelley; (3) petitions related to Haslam's candidacy and petitions for other candidates that he signed, all listing the West Union apartment address; (4) campaign-finance reports listing the West Union apartment address; and (5) mailing records showing that notices sent to the West Union apartment address were delivered, including a certified mailing that Haslam signed for on August 13, 2025.

{¶ 72} These records establish that Haslam *claims* to reside at the West Union apartment. But they do not address the substance of Hicks's allegations that Haslam does not *actually* reside at that address.

{¶ 73} The gravamen of Hicks's challenge is that Haslam does not actually live at his registered voting address. Hicks alleged facts and submitted documentary evidence suggesting that Haslam, regardless of what he represented in the board's records, is actually living in Hamilton County with his family, at the same address where his wife and children live and where his wife is registered to vote. Hicks's challenge presented significant evidence that the board's records could not rebut: that Haslam's wife is registered to vote in Hamilton County, not Adams County; that the Haslams are not legally separated; that Haslam's two minor children live in Hamilton County; that Haslam disclosed in his ethics filing that his wife and children reside in his household—an assertion inconsistent with his living alone in an efficiency apartment; that water-usage data at the West Union apartment is inconsistent with habitation by Haslam or his family; that Haslam's vehicles are registered in Hamilton County; that Haslam divested all real property in Adams County by 2017; and that Haslam has business and charitable interests in Hamilton County. These are factual allegations about Haslam's actual place of residence that the board's records—voter-registration forms, appointment records, candidate petitions, campaign-finance filings, and mailing records—cannot address. The

board does not maintain records of water usage, vehicle registrations, ethics filings, property ownership, or the actual location of a registrant's family.

{¶ 74} When juxtaposed with the evidence presented in Hicks's challenge, the board's records do not support denying the challenge without a hearing. The board essentially determined that Haslam resides at the West Union apartment address because its records say he does. The board's reasoning is circular—since its records show that Haslam is registered to vote in Adams County, has voted in Adams County, and used his Adams County address on election-related records, the board concludes that he must reside in Adams County. But this conclusion ignores the evidence and arguments set forth in Hicks's challenge. In other words, the board's records alone did not tend to either prove or disprove the specific allegations and evidence asserted in Hicks's challenge, and therefore, the board had a duty to convene a hearing under R.C. 3503.24(B).

{¶ 75} The board also stated that it took R.C. 3503.02(D) into consideration. Under that provision, "[t]he place where the family of a married person resides shall be considered to be the person's place of residence; except that when the spouses have separated and live apart," the spouse's actual place of residence governs. At the October 6 meeting, Board Director Lewis stated that R.C. 3503.02(D) does not require a legal separation for the exception to apply. This rationale is inconsistent with this court's interpretation of R.C. 3503.02(D) in *State ex rel. Bobovnyik v. Mahoning Cty. Bd. of Elections*, 2020-Ohio-4003, ¶ 17, in which this court held that "[t]o have meaning other than 'living apart,' 'separated' must refer to something akin to legal separation under R.C. 3105.17. Otherwise, the exception would swallow the rule entirely." To the extent that the board believed that R.C. 3503.02(D)'s rebuttable presumption does not apply to Haslam, the board acted contrary to this court's holding in *Bobovnyik*.

{¶ 76} The undisputed facts that Haslam's wife is registered to vote in Hamilton County and that the board has no evidence of a legal separation trigger

26

the presumption in R.C. 3503.02(D) that the place where the family of a married person resides is the person's place of residence. While this presumption is rebuttable, *see State ex rel. Husted v. Brunner*, 2009-Ohio-5327, ¶ 32-34, it cannot be rebutted by the board's own records alone. Rebutting the presumption requires evidence of the voter's subjective intent—the kind of evidence that may be developed only through testimony at a hearing. As this court recognized in *Husted*, "[b]ecause of the sometimes conflicting nature of [the divisions of R.C. 3503.02], when multiple [divisions] are applicable . . . it is difficult to find by clear and convincing evidence that a person is not a resident of the county claimed." *Id.* at ¶ 27.

**{¶ 77}** The board argues that *Husted* supports its position that "the intent of the voter" is determinative and that it properly found Haslam's intent evident in its records. But *Husted* was not decided merely on a review of board records—there was a hearing with an evidentiary record from which the board and this court could assess whether multiple sections of R.C. 3503.02 informed the residency determination. The same is true of every case that the board cites in support of its decision. In *Bobovnyik*, the board held a hearing at which multiple witnesses testified. *Bobovnyik* at ¶ 5-7. In *State ex rel. Robinson-Bond v. Champaign Cty. Bd. of Elections*, the board conducted an evidentiary hearing before canceling the voter's registration; the court of appeals then granted the voter's mandamus claim on the record of that hearing. 2011-Ohio-6127, ¶ 2, 29 (2d Dist.). These cases support, rather than undermine, the conclusion that a hearing is required when the facts underlying a voter-registration challenge cannot be resolved by the board's records alone.

**{¶ 78}** The board's reliance on *Robinson-Bond* is particularly inapt. The board reads that case as establishing that "the county of residence selected by the elector is supreme." But *Robinson-Bond* involved a board of elections that *canceled* a voter's registration *after an evidentiary hearing*—and a court of appeals

that *reinstated* the registration on the ground that the challenger had not proved the grounds for the challenge by clear and convincing evidence. *Id.* The case says nothing about whether a board of elections may properly deny a challenge without a hearing based solely on a review of its records.

{¶ 79} The board also contends that this court should not consider R.C. 3503.02(D), because it would be "unconstitutional and unconscionable" to subject Haslam to an irrebuttable presumption of residency in Hamilton County with his family. The board misstates Hicks's argument. Hicks is not relying solely on R.C. 3503.02(D). While Hicks has emphasized the spousal-residency presumption because of Mrs. Haslam's undisputed residency and voter registration in Hamilton County, Hicks has argued that all four of the residency rules set forth in R.C. 3503.02 (A) through (D) must be balanced at a hearing.

{¶ 80} Finally, our holding today is consistent with this court's recent decision in *Dunn*, 2026-Ohio-1084. In that case, this court ordered a board of elections to hold a hearing on a voter-registration challenge under R.C. 3503.24, holding that even board members who had recused themselves could not avoid the hearing requirement. *Id.* at ¶ 13, 20-21. The same principle applies here: the board may not avoid the hearing required by R.C. 3503.24(B) by summarily denying a challenge when the board's records are insufficient to resolve the factual questions raised by the challenger.

{¶ 81} For the foregoing reasons, we hold that the board abused its discretion and acted in clear disregard of R.C. 3503.24(B) in denying Hicks's October 3, 2025 challenge without a hearing. Under R.C. 3503.24(B), "a proceeding . . . to challenge a registered elector's right to vote must result in a hearing resembling a judicial trial when the board cannot decide the matter solely on its records." *Tremmel*, 2009-Ohio-5773, at ¶ 16. Accordingly, we grant a writ of mandamus ordering the board to hold a hearing on Hicks's challenge within ten days.

{¶ 82} We emphasize that we express no opinion on the merits of Hicks's challenge to Haslam's voter registration. The question of Haslam's residency is for the board to resolve at a hearing, at which both parties will have the opportunity to present evidence and testimony, as the statute requires.

## E. Sanctions Are Not Warranted

{¶ 83} The board asks us to sanction Hicks under S.Ct.Prac.R. 4.03 because this case and his previous challenge to Haslam's voter registration "are rooted in his desire to punish Mr. Haslam." Because of that animosity, as well as Hicks's requesting to subpoena Haslam's minor children as witnesses at a board hearing and Hicks's attaching to his complaint what the board contends are irrelevant attachments, the board argues that Hicks should be sanctioned.

{¶ 84} S.Ct.Prac.R. 4.03(A) allows us to sanction a person when we determine that the person's filing in this court "is frivolous or is prosecuted for delay, harassment, or any other improper purpose." We decline the board's invitation to sanction Hicks. To be sure, Hicks's persistence in challenging Haslam's right to vote in Adams County and the tone of Hicks's briefing demonstrate animosity toward Haslam and Haslam's counsel. However, regardless of Hicks's animosity toward Haslam, the meritorious nature of his claim for mandamus militates against imposing sanctions.

## III. CONCLUSION

{¶ 85} Neither claim preclusion nor issue preclusion bars this action. Claim preclusion does not apply, because (1) the October 2025 challenge and denial constitute a separate transaction or occurrence from the August 2025 challenge and denial that gave rise to *Hicks I*; (2) the absence of a required quasi-judicial hearing distinguishes this case from *Armatas*, 2020-Ohio-2973, *Grava*, 1995-Ohio-331, and *Tremmel*, 2009-Ohio-5773; and (3) fairness, justice, and public policy counsel against a rigid application of res judicata when the underlying dispute has never been adjudicated, Hicks has corrected his pleading deficiency from *Hicks I*, and

applying res judicata would effectively nullify R.C. 3503.24(B)'s hearing requirement while failing to achieve finality. Issue preclusion does not apply either, because the factual question of Haslam's residency has never been actually litigated or determined in any proceeding; no tribunal has held a quasi-judicial hearing, made findings of fact, or afforded Hicks an opportunity to introduce evidence.

{¶ 86} Hicks, as a "qualified elector" under R.C. 3503.24(A), has standing to bring this action. The board abused its discretion and acted in clear disregard of R.C. 3503.24(B) by denying Hicks's October 2025 challenge without holding a hearing when its records were insufficient to resolve the challenge. The board's five categories of records—voter-registration history, appointment records, petitions, campaign-finance reports, and mailing records—establish only that Haslam claims to reside in Adams County. The records do not address the substance of Hicks's allegations and evidence that Haslam does not actually reside at his registered address. Moreover, the board's apparent application of R.C. 3503.02(D) was contrary to this court's holding in *Bobovnyik*, 2020-Ohio-4003.

{¶ 87} We grant a writ of mandamus ordering the Adams County Board of Elections to hold a hearing within ten days on Hicks's October 3, 2025 challenge to Haslam's voter registration, as required by R.C. 3503.24(B). We grant Hicks's motion for leave to file attachments M and N as rebuttal evidence and deny the motion as to the remaining attachments. And we deny the board's request for sanctions.

Writ granted.

————————————

Christopher R. Hicks, pro se.

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Brian C. Shrive and Joseph T. Mooney, Assistant Prosecuting Attorneys, for respondents.

————————————